HUFSTEDLER, J.
 

 Appellant Churchill was by information charged with the following felonies: count I, violation of
 
 *446
 
 section 211 of the Penal Code, armed robbery of Joel Robinson on 22 October 1965; count II, violation of section 496 of the Penal Code, receiving Joel Robinson’s credit cards on 28 October 1965; count III, violation of section 211 of the Penal Code, armed robbery of Moe Pollner on 28 October 1965; count IV, violation of section 487, subdivision 3 of the Penal Code, theft of Esther Campos’s automobile on 28 October 1965; count V, violation of section 484a, subdivision (b) (6) of the Penal Code, using Joel Robinson’s credit card without authority and with intent to defraud for the purpose of obtaining property from the Broadway Department Stores, Inc., and others on 22 October 1965; counts VI, VII, and VIII, violations of section 459 of the Penal Code, burglary of different locations of the Broadway Department Stores on 22 October 1965; and count IX, violation of section 459 of the Penal Code, also burglary of a Broadway Department Store on 28 October 1965. Churchill was the sole defendant named in counts II and III but was jointly charged with a codefendant in the remaining seven counts.
 

 At the time of trial Churchill personally and his private counsel stipulated with the prosecuting attorney to submit the cause on the transcript of the preliminary hearing, each side reserving the right to offer additional evidence. No further evidence was offered. A jury trial was waived. The court found Churchill guilty as charged in counts IT, III, IV, V and IX, and found the burglary to be of the second degree. Churchill was sentenced to state prison for the term prescribed by law on each count of which he was convicted, the sentences to run concurrently. Churchill appeals from the judgment of conviction.
 

 On appeal Churchill contends: (1) He could not be punished for both theft of the motor vehicle (count IV) and burglary (count IX) because both acts constituted a single criminal transaction within the meaning of section 654 of the Penal Code; (2) he could not be prosecuted and convicted for violating section 496 of the Penal Code, a general statute proscribing receiving stolen property, for the receipt of credit cards (count II) because the facts of the offense parallel the acts proscribed by a specific credit-card statute, section 484a of the Penal Code, and therefore Churchill was subject to prosecution and conviction solely for violating the special statute; (3) he could not be prosecuted for nor convicted of violating section 459 of the Penal Code, burglary, because entry for the purpose of theft by unauthorized use of a credit
 
 *447
 
 card is likewise comprehended by a special statute, section 484a of the Penal Code.
 

 Summary of the Evidence
 

 On October 22, 1965, Joel Robinson was stopped in downtown Los Angeles by Churchill’s eodefendant and another man, whom Mr. Robinson did not clearly observe. The co-defendant stopped Mr. Robinson, exhibited a gun and ordered him into an alley, stating: 1 ‘Lookie here, lookie here, get in here before I kill you.” The codefendant took approximately $80 in cash, assorted credit and identification cards, and glasses from Mr. Robinson, then struck him in the head. On the same date Churchill and his codefendant entered a Broadway Department Store in Hollywood. Churchill, using Robinson’s stolen credit card, charged a number of items of merchandise, in each instance signing the charge slip with the name '
 
 ‘
 
 J oel Robinson. ’ ’
 

 On the evening of October 27, 1965, Mrs. Esther Campos’s station wagon was stolen. Mrs. Campos testified that she had left a dealer’s suspension receipt in her automobile on the night it had been taken.
 

 On October 28, 1965, Mr. Moe Pollner was approached by Churchill, who said to Pollner, “Let me have your wallet.” Mr. Pollner saw that Churchill had a gun, and he gave Churchill his wallet, which contained about $51 and some credit and identification cards.
 

 Also on October 28 Churchill and his codefendant entered a Broadway Department Store in the Crenshaw District. Churchill selected several shirts and presented Joel Robinson’s credit card to the saleswoman. The operations manager of the Broadway, who knew that Robinson’s charge card had been stolen, found out that Churchill was in the store from a telephone verification of the charge card. Before Churchill could sign the charge slip, he and his codefendant were arrested.
 

 Churchill was searched at the time of his arrest and the stolen credit and identification cards of both Robinson and Pollner were found in his possession, as well as the dealer’s suspension receipt that had been taken from Mrs. Campos’s stolen automobile. A Broadway security officer located the Campos automobile after he had been advised by a fellow security officer that Churchill and his codefendant matched the descriptions of the persons who had been illegally, using a charge plate in the Hollywood store. The security officer searched the car and found a loaded Colt .45 gun hidden
 
 *448
 
 beneath the front seat. Fingerprints taken from the rear-view mirror inside the Campos automobile matched the fingerprints of Churchill’s codefendant.
 

 No Double Punishment
 

 Churchill’s argument that his conviction for burglary-should be merged with a conviction for grand theft of the Campos automobile pursuant to section 654 of the Penal Code is without merit. Regardless of whether the theft of the automobile was a part of a single course of conduct intended to culminate in a burglary, section 654 does not prevent punishment of both the burglary and the auto theft because the offenses were committed against different victims, Mrs. Campos and the Broadway, respectively.
 
 (In re Ford
 
 (1967) 66 Cal.2d 183 [57 Cal.Rptr. 129, 424 P.2d 681].) Churchill was properly sentenced on each of those two counts.
 

 Co>unt II Stated No Public Offense
 

 Churchill could not be charged with or convicted of violating section 496 of the Penal Code for receiving stolen credit cards. “Section 484a of the Penal Code was clearly intended to codify into one section all credit card offenses formerly prosecuted under various sections of the Penal Code; and, as a result of its enactment, a person charged with an offense involving a credit card may not be prosecuted therefor under the general statutes.
 
 (People
 
 v. Swann, 213 Cal.App.2d 447, 451 [28 Cal.Rptr. 830].)”
 
 People
 
 v.
 
 Ali
 
 (1967) 66 Cal.2d 277 [57 Cal.Rptr. 348, 424 P.2d 932].
 

 Count II of the information does not state a public offense. If we strike out as surplusage the reference to section 496 of the Penal Code, a public offense is stated only if the averments remaining in the pleading are sufficient to charge a violation of section 484a, despite the fact that section 484a is not named.
 
 (People
 
 v.
 
 Reddick
 
 (1959) 176 Cal.App.2d 806, 820 [1 Cal.Rptr. 767].) The subsections of section 484a which could be conceivably applicable are subsections (1), (2) and (3), each of which requires a specific intent which is not alleged in the information.
 
 [1]
 

 
 *449
 
 The People argue that we can disregard the word “credit” in the information charging receipt of stolen credit cards and as thus read a public offense is stated. In charging an offense the People could have averred the property taken in general terms or they could have omitted the description of the property. (Pen. Code, § 952.) The People did neither. We cannot treat the reference to credit cards as an immaterial misdescription of the property. The difficulty with the information is not that the description of the property was not specific or was mistaken, but rather that the property specifically designated could not be the subject of a prosecution under the statute charged. The failure of an accusatory pleading to state a public offense is not waived by the failure of the accused to file a timely demurrer. (Pen. Code, § 1004, subd. 4; Witkin, Cal. Criminal Procedure (1963) § 237, p. 221.)
 

 Penal Code Section 459 Is Not Preempted by Penal Code Section 484a
 

 Churchill’s contention that he cannot be prosecuted for and convicted of burglary pursuant' to section 459 of the Penal Code because section 484a, subdivision (6), preempts the subject matter is without merit. A special statute will control a general statute where “ ‘the general statute standing alone would include the same matter as the special act, and thus conflict with it. . . .’ ”
 
 (In re Williamson
 
 (1954) 43 Cal.2d 651, 654 [276 P.2d 593], See also
 
 People
 
 v.
 
 Jones
 
 (1964) 228 Cal.App.2d 74, 82-85 [39 Cal.Rptr. 302] ;
 
 People
 
 v.
 
 Fiene
 
 (1964) 226 Cal.App.2d 305 [37 Cal.Rptr. 925];
 
 People
 
 v.
 
 Farina
 
 (1963) 220 Cal.App.2d 291 [33 Cal.Rptr. 794].) The elements of the offense proscribed by the burglary statute, section 459 of the Penal Code, and that proscribed by section 484a, subdivision (6), of the Penal Code are not identical even though coincidentally a particular defendant's acts may constitute a violation of both statutes.
 

 The general burglary statute penalizes every person who
 
 *450
 
 makes entry into a store, among other places, with intent to commit grand or petit larceny or any felony. If an accused has made an entry with intent to violate those portions of section 484a of the Penal Code constituting a felony, he can be prosecuted for burglary. One may be guilty of violating the credit card statute, however, without necessarily making any entry whatsoever. The use or attempted use of a credit card for the purpose of “obtaining goods, property, services, or anything of value” need not be preceded by the entry forbidden by section 459 of the Penal Code. Section 484a, subdivision (6), of the Penal Code would encompass, for example, the use of a credit card which was found on the premises after a store was entered or the use of a credit card for the purpose of placing a telephone order.
 

 It is true, of course, that a defendant whose acts constituted a violation not only of the burglary statute but also of the credit card statute could not be punished for both offenses by reason of the application of section 654 of the Penal Code. (E.g.,
 
 Neal
 
 v.
 
 State of California
 
 (1960) 55 Cal. 2d 11, 18-21 [9 Cal.Rptr. 607, 357 P.2d 839], cert. denied, 365 U.S. 823 [5 L.Ed.2d 700, 81 S.Ct. 708].) The acts for which Churchill was convicted under the burglary statute were not the subject of a conviction under section 484a of the Penal Code.
 

 The judgment is modified by striking Churchill's conviction of count II of the information and his sentence with respect thereto. The judgment is in all other respects afSrmed.
 

 Kaus, P. J., and Stephens, J., concurred.
 

 [1]
 

 ‘ (b) Any who:
 

 “ (1) Steals, taires or removes a credit card from the person or possession of the cardholder, or, who retains or secretes a credit card without the consent of the cardholder, with the intent of using, delivering, circulating or selling or causing said card to be used, delivered, circulated or sold without the consent of the cardholder, is guilty of a misdemeanor.
 

 “ (2) Has in his possession or under his control or who receives from another person any forged, altered, counterfeited, fictitious, or stolen
 
 *449
 
 credit card with the intent to use, deliver, circulate or sell the same, or to permit or cause or procure the same to be used, delivered, circulated or sold, knowing the same to be forged, altered, counterfeited, fictitious, or stolen,
 
 or who
 
 has or keeps in his possession, any blank or unfinished credit card made in the form or similitude of any credit card, with such intent, is guilty of a misdemeanor.
 

 “ (3) Has in his possession, or under his control, or who receives from another person a credit card with the intent to circulate or sell the same, or to permit or cause or procure the same to be used, delivered, circulated or sold, knowing such possession, control or receipt to be without the consent of the cardholder or issuer, is guilty of a misdemeanor. ’
 
 ’