[Crim. No. 13726.   Second Dist., Div. One.   June 3, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM A. GREENFIELD, Defendant and Appellant.

Robert A. Doyle, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard H. Cooper, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of burglary in the second degree (Pen. Code, § 459) and of receiving stolen property (Pen. Code, § 496).

In an information filed in Los Angeles on October 31, 1966, defendant was charged in count 1 with burglary in that he did on August 30, 1966, enter the Broadway Department Store, in West Covina, with the intent then to commit a felony, namely, a violation of section 484a, subdivision (b) (6), of the Penal Code, and in count 2 with receiving stolen property in that he did on August 30, 1966, receive personal property knowing the same to have been stolen from the owner, Robert Anderson. It was further charged that defendant previously had been convicted of burglary on October 23, 1953, in Alameda County and served a term therefor in prison, that he had been convicted of assault with a deadly weapon in Alameda County on March 11, 1955, and served a term therefor in prison and that he has been convicted of a violation of section 4390 of the Business and Professions Code, in Solano County on March 10, 1960, and served a term therefor in prison. Defendant pleaded not guilty to counts 1 and 2 and ultimately admitted the three charged prior convictions. In a jury trial defendant was found guilty as charged. Probation was denied and defendant was sentenced to the state prison as to count 1; the sentence on count 2 was "stayed pending appeal" and it was ordered that following "the service of any sentence the Adult Authority pronounces on count 1 and at the completion of any sentence on count 1 the stay is to become permanent." Defendant filed a timely notice of appeal from the judgment and an attempted appeal from the order denying a motion for new trial. Under the circumstances there is no appeal from the order with reference to the motion for a new trial and that purported appeal is dismissed.

A résumé of some of the facts is as follows: Robert Anderson on August 29, 1966, had certain credit cards in a wallet in his jacket pocket. About 3 p.m. he removed his jacket, hung it on a chair, and left the room where he was hanging some electric light fixtures. Anderson gave no one permission to remove the cards from his jacket or to use them in any way. The cards were missing from his jacket when he left the job about 5 p.m. Anderson reported the loss to the police the next morning. Among the cards were two BankAmericard cards, one of which was signed by Anderson and the other of which was unsigned.

Anderson received a bill for some clothing purchased on his Broadway Department Store (hereafter referred to as Broadway) credit card from the Broadway, West Covina. The amount of the purchase was shown as $24.87 and the date was

subsequent to the time the cards had been taken from Anderson's jacket. Anderson had made no purchase at the Broadway at the time and place in question.

At about 5 p.m. on August 30, 1966, defendant selected a pair of shoes at the Broadway, West Covina. He had them fitted, then selected a second pair. The salesman Ernest Puerner asked whether the transaction was to be cash or charge; defendant replied "Charge" and gave Puerner the Anderson Broadway Credit card. While the transaction was taking place defendant handed Puerner a hat and some socks. Puerner made out a sales slip and defendant signed the name "Robert J. Anderson." Printed on the sales slip was the account number 0 114 538 345 1, as well as the printed name "Robert J. Anderson," made by the imprint from a charge-a-plate. Defendant did not state that his name was not Robert J. Anderson. Under the rules of the store Puerner was required to call for credit authorization because the total amount of the sale was $75.76. Mr. Carrabine, the credit manager, and a Mr. Seaman came to the area of the store where the transaction was taking place. Carrabine saw defendant standing at the sales desk with Puerner. Carrabine asked defendant if he had any identification and defendant replied that his identification was out in the car. When Carrabine suggested that they would go out to the car defendant indicated that he had been dropped off at the store and that there was no car there. Defendant ultimately produced a piece of paper with his true name, Greenfield, on it.

Carrabine asked defendant to accompany him to the fitting room area where defendant told Carrabine that his name was not on the card and that his real name was Greenfield. Carrabine advised defendant that he would have to await the arrival of the West Covina police. Later Carrabine found a Broadway charge-a-card in the fitting room where defendant had been waiting. Officer Smith arrived at the store in reply to a call and saw defendant seated in one of the fitting rooms. Smith, defendant, and Carrabine then went upstairs to the office of the security officer. Smith advised defendant of his constitutional rights and defendant indicated that he understood. Smith searched defendant after his arrest and found a card holder containing about ten credit cards, and a note in defendant's right rear pocket.

Officer Bateman talked with defendant on August 31, 1966, and asked him where he got the credit cards and defendant replied that he had met a white man around 6th and Main Streets in Los Angeles; however he did not remember the

exact intersection nor did he know the individual. Defendant stated that the white man knew that he needed some money to get out of town and offered to help him get some money. Defendant further stated that they got into a car (type unknown) and proceeded to the West Covina Broadway parking lot. Defendant said that the white man gave him a wallet with some credit cards and told him to go in and buy anything he wanted, that the cards were good. Defendant was asked if he had purchased two pairs of shoes, four pairs of socks and a hat at the Broadway and defendant replied in the affirmative. Defendant denied having signed the purchase order or any other document. Defendant further told the officer that he had not attempted to use any of the credit cards prior to his arrest, that they ''. . . should have gotten the other guy, the big one. He had credit cards in every pocket.''

Appellant now asserts that he was deprived of a fair trial because a juror had observed him dressed in jail clothes and that the evidence is insufficient as a matter of law because there was nothing to establish that appellant had any felonious intent when he entered the store.

The record discloses that a jury was impaneled in the morning of November 15, 1966. Appellant was dressed in blue denim garments which were clean and did not attract attention to him. Appellant however apparently by his actions did indicate a surly attitude toward the court and his attorney. In any event, the jury was passed for cause and accepted and no motion was made with reference to any clothing of appellant until after the jury was selected and proceedings had gone forward throughout the morning. Appellant then moved for a mistrial. It was brought out in testimony that in the ordinary course of events appellant's own clothes would be on a rack ready for him as he was dressing for court had he been of the mind to wear them. Appellant testified in effect that he was unaware of any clothes rack. The judge made inquiry as to whether there was another jury panel available and upon learning that there was, granted the motion and called for the new panel. A new jury was selected and the new trial proceeded. The appellant stated ''Accept the jury as now constituted, your Honor.'' He had the opportunity to question any juror. Appellant later made a motion for a mistrial upon the basis that one of the jurors had seen him in the blue denims earlier in the morning and must therefore have known that appellant was in jail. The motion was denied.

Appellant relies almost entirely upon what is said in *Eaddy* v. *People* (1946) 115 Colo. 488 [174 P.2d 717, 169 A.L.R. 471]. That case states at page 718 "The decision as to proper clothing should be within the sound discretion of the trial court which has the custody of the defendant, . . ." The court in the case at bench exercised the utmost discretion. No juror in the trial was in the courtroom. The juror (Gonzales) who saw appellant in the morning in blue denims was called after the verdict and testified that there was nothing in appellant's appearance which caused any prejudice toward appellant, that he had decided the case solely on the evidence introduced in court and appellant's dress had nothing whatever to do with the decision in his case. A reading of the record in this case demonstrates beyond question that appellant was guilty as charged. (See *People* v. *Deveny,* 112 Cal. App.2d 767, 770 [247 P.2d 128].)

No useful purpose would be served in reciting the facts in this case, suffice it to say that the evidence is more than sufficient to support the judgment. (See *People* v. *Newland,* 15 Cal.2d 678, 680 [104 P.2d 778]; *People* v. *Robillard,* 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; *People* v. *Love,* 53 Cal.2d 843, 850 [3 Cal.Rptr. 665, 350 P.2d 705]; *People* v. *Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]; *People* v. *Carter,* 223 Cal.App.2d 811 [36 Cal.Rptr. 176].)

The purported appeal from the order denying the motion for a new trial is dismissed.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied June 17, 1968, and appellant's petition for a hearing by the Supreme Court was denied July 31, 1968.