[Crim. No. 11954. In Bank. Nov. 14, 1969.]

In re HOWARD KENNETH WILLIAMS on Habeas Corpus.

**COUNSEL**

Howard Kenneth Williams, in pro. per., and Robert N. Beechinor, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and James T. McNally, Deputy Attorney General, for Respondent.

**OPINION**

**TOBRINER, J.**—On November 7, 1966, petitioner, Howard K. Williams, pleaded guilty to forgery (Pen. Code, § 470) before the committing magistrate. The magistrate certified the case to the superior court. On December 7, 1966, that court denied petitioner's motion to withdraw his guilty plea and sentenced him to the state prison for the term prescribed by law, one to fourteen years. (Pen. Code, § 473.) Petitioner did not file a timely notice of appeal from the judgment. He sought a belated appeal; on February 14, 1967, the superior court found there was no cause for appeal. (Pen. Code, § 1237.5.) This court denied two previous petitions for habeas corpus on grounds unrelated to the present petition on September 26, 1967, and December 20, 1967.

On February 16, 1968, petitioner filed a petition for writ of habeas corpus seeking reversal of the judgment on the ground that the People lacked the power to prosecute him for forgery under section 470 of the Penal Code because the acts he was alleged to have committed constituted a violation of former section 484a of the Penal Code, which proscribed conduct involving the misuse of credit cards. (See *People* v. *Ali* (1967) 66 Cal.2d 277, 279-281 [57 Cal.Rptr. 348, 424 P.2d 932]; *People* v. *Swann* (1963) 213 Cal.App.2d 447, 449 [28 Cal.Rptr. 830]; see also *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].) We issued an order to show cause. After the return was filed, we appointed a referee to take evidence and make findings to determine whether the public defender who represented petitioner at the time of the guilty plea investigated the facts and the law under *People* v. *Swann, supra,* 213 Cal.App.2d 447, and discussed with the petitioner a defense based on *Swann.*

We have concluded that the writ should be issued, the remittitur recalled, the judgment of conviction reversed, the petitioner be permitted to withdraw his guilty plea, and the cause remanded for further proceedings. The public defender did not provide the petitioner with effective assistance of counsel in that he did not research the facts and the law under

*People* v. *Swann, supra,* 213 Cal.App.2d 447, and did not discuss a defense to the forgery charge based on *Swann,* but permitted the petitioner to plead guilty to a crime which he did not commit. (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 466 [34 Cal.Rptr. 863, 386 P.2d 487]; see *In re Hawley* (1967) 67 Cal.2d 824, 828 [63 Cal.Rptr. 831, 433 P.2d 919].)

We may summarize the evidence introduced at the hearing and the referee's findings as follows:

On October 30, 1966, petitioner attempted to purchase two airline tickets from Los Angeles to Texas which were worth $152.26. To obtain them he presented to the clerk at the American Airlines ticket counter at the Los Angeles airport a Carte Blanche credit card in the name of Norman Dolin, together with Norman Dolin's driver's license. Petitioner signed Norman Dolin's name on the credit card voucher. While petitioner waited, the airline clerk checked the status of the credit card and discovered that it belonged to an attorney from Beverly Hills who had reported it lost on October 23, 1966.

The clerk called the police, detaining petitioner by saying that the check on the credit card had not been completed. Two Los Angeles police officers arrived. Informing the officers of the card's status, the clerk gave them the voucher signed by petitioner. The officers then placed petitioner under arrest, giving him the required constitutional warnings. According to the police report, petitioner asserted that he owned the credit card and that his name was Norman Dolin. Petitioner, however, testified at the evidentiary hearing that he told the police officers that Norman Dolin, an associate of his, had given him the credit card to purchase the airline tickets. Petitioner argued that if the card was not properly in his possession, he would not have remained so long at the airline ticket counter while the clerk checked the card.

Upon leaving the airport terminal, petitioner took the officers to a 1966 Cadillac sedan parked outside. Although the police report indicates that petitioner told the officers that he had leased the automobile from Hertz with a cash deposit, petitioner testified at the hearing that his associate had leased the car. The officers called the Hertz office at the airport and discovered that the car had been leased with the Carte Blanche card of Norman Dolin and that the lessee was expected to return the car on October 31, 1966.

On November 1, petitioner appeared in the Municipal Court of the Inglewood Judicial District, Los Angeles County, for arraignment. The District Attorney of Los Angeles County charged petitioner with three offenses: (1) forgery in violation of section 470 of the Penal Code of "a certain credit voucher and order in writing for the payment of money in the

sum of . . . $152.26 . . . "; (2) forgery in violation of section 470 of the Penal Code of "a certain rental agreement [for the Hertz automobile] and order in writing for the payment of money in the sum of . . . $18.00 . . . "; (3) violation of section 484a, subdivision (b)(5), of the Penal Code for forging, materially altering and counterfeiting a credit card.

On the day of the preliminary hearing, the deputy public defender visited petitioner in jail and discussed the case. Petitioner remembers that he told the deputy public defender that Norman Dolin had given him the credit card to purchase airline tickets, and that he denied having forged the credit card voucher. The deputy public defender, who is now in private practice, testified that although he does not retain an independent recollection of the facts of this case, he probably followed his normal procedure of reading only the police report before interviewing the accused person. The police report indicated that petitioner had claimed to be Norman Dolin at the time of arrest, that petitioner was not Norman Dolin, and that petitioner had attempted to misuse the credit card in purchasing airline tickets.

The deputy did not discuss any defense to the charges, according to petitioner, but inquired whether he would plead guilty to count I of the information, which charged forgery, if the other two counts were dropped and petitioner were sent to county jail for six months. When petitioner agreed to this arrangement the deputy left to discuss the case with one of the attorneys in the district attorney's office. Upon the deputy's return, he repeated to petitioner the terms of the agreement to which petitioner had previously assented.

At the preliminary hearing petitioner appeared with the same deputy public defender and pleaded guilty to count I; the deputy district attorney moved to dismiss the charges in counts II and III. The court dismissed charges on these two counts and bound petitioner over for sentencing by the superior court. When petitioner appeared in the superior court he found that another deputy public defender was present in court to represent him; this attorney knew nothing of the above agreement. Thereupon petitioner personally requested permission to withdraw his plea but the court denied the motion as untimely. The court sentenced petitioner to prison for the term prescribed by law, one to fourteen years.

At the time of the commission of the crime the state could not have prosecuted petitioner for forgery under section 470 of the Penal Code because the charged offense constituted a violation of former section 484a[1]

---

[1]Former section 484a provided in relevant part: "(b) Any person who: . . . (6) Knowingly uses or attempts to use for the purposes of obtaining goods, property, services or anything of value, a credit card which was obtained, or is held by the user, under circumstances which would constitute a crime under paragraphs (1), (2)

of the Penal Code proscribing misuse of credit cards. In *People* v. *Swann, supra,* 213 Cal.App.2d 447, 449, the Court of Appeal for the Second District held that the state did "not have the power to prosecute under the general felony statute [Pen. Code, § 470, forgery] in a case such as this where the facts of the alleged offense parallel the acts proscribed by a specific statute [Pen. Code, § 484a, subd. (b)(6)]." In support of this conclusion, the court cited *In re Williamson, supra,* 43 Cal.2d 651, 654, in which we held: "where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment." We denied the state's petition for hearing in the *Swann* case and approved *Swann's* rationale in *People* v. *Ali* (1967) 66 Cal.2d 277 [57 Cal.Rptr. 348, 424 P.2d 932]. (See *People* v. *Scott* (1968) 259 Cal.App.2d 589 [66 Cal.Rptr. 432]; *People* v. *Churchill* (1967) 255 Cal.App.2d 448 [63 Cal.Rptr. 312].)[2] Thus petitioner pleaded guilty, suffered conviction, and went to prison for the crime of forgery which he did not commit.

Although petitioner talked with the deputy public defender and pleaded guilty almost four years after the Court of Appeal's decision in *Swann,* the deputy did not know of the case. In fact, the deputy testified that he had only become aware of *Swann* about a month prior to the hearing before the referee in 1968. Although he apparently knew of the general proposition that special legislation takes precedence over general legislation, no evidence indicated that he applied that concept to this case and the *Swann* defense. At the reference hearing the deputy defended his actions in retrospect by saying that the *Swann* type defense would not be relevant to a

---

or (3) of this subdivision, is also guilty of a misdemeanor if the total amount of goods, property or services or other things of value so obtained by such person does not exceed fifty dollars ($50), or is also guilty of a felony, if the total amount of goods, property or services or other things of value so obtained by such person exceeds fifty dollars ($50)."

Paragraphs (1), (2), and (3) read as follows: "(1) Steals . . . a credit card from the person . . . of the cardholder, or, who retains . . . a credit card without the consent of the cardholder, with the intent of using . . . or causing said card to be used . . . without the consent of the cardholder, is guilty of a misdemeanor. (2) Has in his possession . . . any . . . altered . . . or stolen credit card with the intent to use . . . the same . . . knowing the same to be . . . altered . . . or stolen . . . is guilty of a misdemeanor. (3) Has in his possession . . . a credit card with the intent to . . . cause . . . the same to be used . . . knowing such possession . . . to be without the consent of the cardholder or issuer, is guilty of a misdemeanor." (Stats. 1961, ch. 813, § 1, pp. 2090-2092.)

[2] In 1967 the Legislature repealed section 484a (Stats. 1967, ch. 1395, § 1, pp. 3258-3260) and enacted Penal Code sections 484d through 484i, which contain various credit card offenses. The new statute provides that it "shall not be construed to preclude the applicability of any other provision of the criminal law of this state which presently applies or may in the future apply to any transaction which violates this act." (Stats. 1967, ch. 1395, § 8.)

plea bargain situation such as that presented by petitioner's case.[3] The district attorney had charged petitioner with two counts of forgery, which is an alternative felony-misdemeanor, and the third count, which is a felony. In order to afford petitioner the possibility of receiving a misdemeanor conviction, the deputy urged petitioner to plead guilty to one count of forgery.

The Sixth Amendment, which is applicable to the states through the due process clause of the Fourteenth Amendment *(Gideon* v. *Wainwright* (1963) 372 U.S. 335, 342 [9 L.Ed.2d 799, 803, 83 S.Ct. 792, 93 A.L.R.2d 733]), provides that: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." (U.S. Const., 6th Amend.) The logical corollary of this right is the right of indigents to have effective counsel appointed by the court at state expense. (See *Powell* v. *Alabama* (1932) 287 U.S. 45, 72 [77 L.Ed. 158, 172, 53 S.Ct. 55, 84 A.L.R. 527]; *People* v. *Ibarra, supra,* 60 Cal.2d 460, 464.) California has fulfilled its responsibility to provide counsel for indigents largely by establishing public defender's offices. (See Cuff, *Public*

---

[3]On at least a dozen separate occasions during the reference hearing the defense counsel insisted that he had no present memory of the facts of petitioner's case. On one occasion, however, the attorney made a statement which might be construed to the effect that he had considered the *Swann* type defense at the time of his conference with petitioner:

"Q. *And did you come to any conclusion,* or hold any opinion *at that time* as to whether the conduct attributed to Mr. Williams might not constitute a violation of Section 470 of the Penal Code because of the Special Legislation then contained in Section 484a?

"[Deputy public defender] A. *I don't recall whether I drew that conclusion or not, but I know I don't consider it relevant.*

"Q. Why not?

"A. Well, the situation, reason for the District Attorney's filing a 470 in the first place was because the other Code Section, the Count 484a(b)(5) is a straight felony and in order to have a bargain plea situation it was, it was better to file a lesser count which forgery is considered, and in these types of situations they [*sic*] would usually be a plea, where there is any type of case there would usually be a plea to this lesser count, and forgery is an alternative felony-misdemeanor, so anything on it was a bargain plea, therefore we pleaded the count at the lesser count and the count 484a(b) (5) dismissed, so whether or not when the, getting back to your question *I didn't consider it relevant."* (Italics added.)

In the deputy's answers to these questions he was describing not a judgment decision he made at the 1966 trial, but a judgment he was making at the 1968 reference hearing. Defense counsel's justification of the plea is not a description of why he advised a guilty plea in 1966, but an explanation in 1968 of why he feels his advice to petitioner was good despite *Swann.* The deputy's general lack of memory concerning the case seems to discount the last sentence in which he says: "I *didn't* consider it relevant." (Italics added.) The deputy's primary response to the question of whether he had "come to any conclusion" "at the time" was that he did not recall. We cannot presume that merely because the attorney knew of the general proposition that special legislation takes precedence over general legislation, he would have applied that concept to this case and the *Swann* type defense. The deputy clearly admitted that he did not know of *Swann* until 1968.

*Defender System: The Los Angeles Story* (1961) 45 Minn.L.Rev. 715; David, *Institutional or Private Counsel: A Judge's View of the Public Defender System* (1961) 45 Minn.L.Rev. 753.)

 Before entering his plea, petitioner was "entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." (*Von Moltke* v. *Gillies* (1948) 332 U.S. 708, 721 [92 L.Ed. 309, 319, 68 S.Ct. 316].)[4] The attorney's role in investigating the facts and researching the applicable law prior to advising the petitioner to plead becomes particularly important because of the serious consequences of a guilty plea. "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing more remains but to give judgment and determine punishment." (*Boykin* v. *Alabama* (1969) 395 U.S. 238, 242 [23 L.Ed.2d 274, 279, 89 S.Ct. 1709]; see *Kercheval* v. *United States* (1927) 274 U.S. 220, 223 [71 L.Ed. 1009, 1012, 47 S.Ct. 58].)

In *People* v. *Ibarra, supra,* 60 Cal.2d 460, this court defined the attorney's role at trial: "It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he was entitled." (*Id.* at p. 464.) In *In re Hawley, supra,* 67 Cal.2d 824, we discussed the application of *Ibarra* to the pretrial process: "Counsel by advising his client to plead guilty cannot be permitted to evade his responsibility to adequately research the facts and the law." We further noted, "Counsel is particularly qualified to make such a recommendation [as to a bargain plea] because it is he, not his client, who possesses the skills to analyze the nature of the charges, to evaluate the evidence, and to make informed recommendations." We concluded: "Deprivation of the right to counsel at the pleading stage because of incompetency can well constitute a deprivation of due process." (*Id.* at p. 828.)

If the deputy public defender in this case defaulted in his duty to investigate carefully the facts and the law and thereby withdrew a crucial defense from the case, *Ibarra* and *Hawley* would indicate that petitioner was deprived of his right to effective counsel and thus due process of law.

---

[4]When petitioner entered his plea of guilty he was represented by a deputy public defender. This court has long held that an accused has a right to counsel upon entering a plea to a criminal charge. (See *In re Johnson* (1965) 62 Cal.2d 325 [42 Cal.Rptr. 228, 398 P.2d 420]; *In re James* (1952) 38 Cal.2d 302 [240 P.2d 596]; *People* v. *Chesser* (1947) 29 Cal.2d 815 [178 P.2d 761, 170 A.L.R. 246]; see also *Hamilton* v. *Alabama* (1961) 368 U.S. 52 [7 L.Ed.2d 114, 82 S.Ct. 157]; *Powell* v. *Alabama, supra,* 287 U.S. 45, 69 [77 L.Ed. 158, 170].)

■ In considering the effectiveness of counsel at the pleading stage, we should not judge attorneys by the harsh light of hindsight, but we must determine whether the appointed counsel at the time was "reasonably likely to render, *and* [was] *rendering,* reasonably effective assistance." (*MacKenna* v. *Ellis* (5th Cir. 1960) 280 F.2d 592, 599, modified 289 F.2d 928, cert. den. (1961) 368 U.S. 877 [7 L.Ed.2d 78, 82 S.Ct. 121].)[5]

■ As we have noted, the deputy public defender first met with the petitioner on the day of the preliminary hearing at which petitioner was to plead to the charges against him.[6] Unaware of *People* v. *Swann, supra,* 213 Cal.App.2d 447, the deputy permitted petitioner to plead to an offense that the evidence demonstrated he had not committed. Yet, not only had *People* v. *Swann* long been published but the rule of the case had been reported by Witkin in the 1963 Supplement to California Crimes and repeated in the 1965 Supplement. (See 1 Witkin, Cal. Crimes (1963, 1965 Supp.) § 517.) Witkin explained the case as follows: "The court held that the credit card section was a specific statute which prevailed over the general forgery statute, and that the prosecutor could not elect to prosecute for the felony under P.C. 470 instead of the misdemeanor under P.C. 484a." (See also 23A West's California Digest (Forgery, § 7(1)) 9 (1964).)

Hence, the deputy public defender on November 7, 1966, did not know of a case decided nearly four years earlier on February 27, 1963, which had been fully noted in the normal resources of legal research. In fact, the deputy did not become aware of the *Swann* rule until November 1968, although the holding of the case was approved by this court in March 1967 (*People* v. *Ali, supra,* 66 Cal.2d 277) and was cited by three Courts of Appeal (*People* v. *Churchill, supra,* 255 Cal.App.2d 448; *In re Ward* (1964) 227 Cal.App.2d 369 [38 Cal.Rptr. 650]; *People* v. *Fiene* (1964) 226 Cal.App.2d 305 [37 Cal.Rptr. 925].) In recommending that the petitioner plead guilty to an offense that petitioner had not committed, the

---

[5]The United States Court of Appeals for the Fourth Circuit has provided substantial guidance for bench and bar as to the proper role of counsel in the pretrial process: "Counsel for an indigent defendant should be appointed promptly. Counsel should be afforded a reasonable opportunity to prepare to defend an accused. Counsel must confer with his client without undue delay and as often as necessary, to advise him of his rights and to elicit matters of defense or to ascertain that potential defenses are unavailable. Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed . . . ." (*Peyton* v. *Coles* (4th Cir. 1968) 389 F.2d 224, 226, cert. den. (1968) 393 U.S. 849 [21 L.Ed.2d 120, 89 S.Ct. 80].)

[6]See generally, as to the dangers involved in the appointment of counsel without the opportunity for adequate preparation, *United States* ex rel. *Mathis* v. *Rundle* (3d Cir. 1968) 394 F.2d 748; *Fields* v. *Peyton* (4th Cir. 1967) 375 F.2d 624; *Martin* v. *Commonwealth* (4th Cir. 1966) 365 F.2d 549; *Townsend* v. *Bomar* (6th Cir. 1965) 351 F.2d 499; *Johnson* v. *United States* (5th Cir. 1964) 328 F.2d 605; *Jones* v. *Cunningham* (4th Cir. 1963) 313 F.2d 347.

deputy unfortunately proceeded "in default of knowledge that reasonable inquiry would have produced, and hence in default of any judgment at all." (*Brubaker* v. *Dickson* (9th Cir. 1962) 310 F.2d 30, 39.)

The deputy public defender rationalized his recommendation to plead guilty to the forgery charge in the 1966 trial at the 1968 reference hearing by arguing that petitioner bargained away his *Swann* defense in return for the possibility of a misdemeanor forgery sentence. The record discloses, however, that petitioner and defense counsel had no idea that there was a *Swann* defense, and can hardly be said to have bargained it away. (See *People* v. *Wadkins* (1965) 63 Cal.2d 110 [45 Cal.Rptr. 173, 403 P.2d 429].) In any event the record clearly states that the attorney did not discuss the defense with his client at all. We cannot excuse the attorney from the obligation to inform his client of this crucial defense by permitting counsel to disregard the police report and to accept defendant's story of the credit card's ownership at face value.[7] If the attorney can indulge in such secret deliberation about the fate of his client, he leaves his client in the position of reaching a critical decision in complete ignorance.[8]

In any event, the "benefit of the bargain," in view of *Swann,* must necessarily have been no more than an illusion. The "benefit" depends primarily upon the reasonable possibility that petitioner might have been sentenced as a forgery misdemeanant. Several years earlier petitioner had

---

[7] As the Continuing Education of the Bar handbook for California Criminal Practice has observed under the heading of "Getting the Facts From the Client," "Owing to the emotional ordeal the defendant is undergoing, you will seldom learn all the facts from him at the first interview. He may be embarrassed and therefore reluctant to tell you everything that happened. He may have a poor memory, or wish to forget exactly what happened. If your client's version of the facts differs from that told you by witnesses or by the district attorney, you should ask him to explain the difference. It is usually necessary to cross-examine your client to arrive at the truth. You should not be embarrassed to question him. Do not take his word. Challenge him; point out that what he is telling you is contrary to reason and experience. You will find that in visiting the defendant a number of times, you will build a relationship with him that he will not wish to break by lying, and he will try to tell you the truth." (Cal. Criminal Practice (Cont. Ed. Bar 1964) § 3.31, p. 123; see 1 Amsterdam, Segal, & Miller, Trial Manual for the Defense of Criminal Cases (1967) § 83, p. 2-50, § 89, p. 2-53.)

[8] As the United States Supreme Court observed in *Kercheval* v. *United States, supra,* 274 U.S. 220, 223 [71 L.Ed. 1009, 1012]: "Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily *after proper advice* and with full understanding of the consequences." (Italics added.) (See *Machibroda* v. *United States* (1962) 368 U.S. 487, 493 [7 L.Ed.2d 473, 477, 82 S.Ct. 510].) The attorney should not overlook the fact that the decision to plead guilty or not guilty ultimately lies with the defendant. (Pen. Code, § 1018; *In re Beatty* (1966) 64 Cal.2d 760, 765 [51 Cal.Rptr. 521, 414 P.2d 817]; *In re Rose* (1965) 62 Cal.2d 384, 390 [42 Cal.Rptr. 236, 398 P.2d 428].) Counsel should afford the defendant the assurance of reaching an informed decision. (See *People* v. *Mendez* (1945) 27 Cal.2d 20, 21-22 [161 P.2d 929]; *People* v. *Loeber* (1958) 158 Cal.App.2d 730, 735-736 [323 P.2d 136].)

been convicted of forgery, and was then sentenced as a misdemeanant. When arrested in 1966 he was charged with two additional counts of forgery and one of credit card alteration. He was also wanted at that time by Nevada and Arizona for some undisclosed offenses, although those states have since recently indicated that they retained no interest in the return of petitioner. Defense counsel knew of petitioner's record and had no reason to believe that the judge would be unusually lenient. The facts of this case present no reasonable possibility that petitioner would have obtained a misdemeanor sentence.

The "benefit" theory also presupposes that petitioner could not have been sentenced as a misdemeanant if the complaint had been amended to charge only credit card violations. The sentencing judge, however, could have suspended the sentence on the two felony counts and only incarcerated petitioner on the misdemeanor credit card count. The deputy public defender offered no explanation as to why, if the sentencing judge would have been willing to give a misdemeanor forgery sentence, he would not have been willing to order a misdemeanor credit card sentence.

Furthermore, the benefit argument assumes that no plea bargaining would have been possible once the defendant forced an amendment of the complaint. Under the original complaint petitioner was charged with three felonies, carrying maxima of 14, 14, and 5 years respectively. Under a properly amended complaint petitioner would have been charged with two felonies and one misdemeanor, with maxima of 5, 5, and 1 years respectively. We can see no reason to assume that petitioner could not have obtained a better overall bargain, considering both minimum and maximum possible sentences, under the properly amended complaint than he was able to obtain under the complaint as filed. Petitioner must have believed that his guilty plea reduced his possible maximum term from 33 years (two forgery and one credit card felonies) to 14 years (one forgery felony). In fact, the guilty plea raised the maximum term from either 6 or 11 years, depending on whether count III was merged with count I, to 14 years.

Petitioner has been convicted and sentenced to prison for a crime which he did not commit. The maximum sentence to which petitioner is now subject, 14 years, is between 3 and 8 years greater than the maximum sentence established by the Legislature for the crimes with which petitioner could lawfully have been charged. We cannot believe that petitioner bargained away his right to be tried and sentenced pursuant to the terms of the California Penal Code, rather than under some ad hoc arrangement between the district attorney and the deputy public defender who was unaware of a defense basic to the case.

The writ is granted and petitioner is remanded to the Superior Court for the County of Los Angeles for proceedings consistent with this opinion.

Traynor, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.