[Crim. No. 5774. Third Dist. Sept. 23, 1970.]

In re WILLIAM A. GREENFIELD on Habeas Corpus.

**COUNSEL**

John Beede, under appointment by the Court of Appeal, for Petitioner.

Thomas C. Lynch, Attorney General, Daniel J. Kremer, Edward A. Hinz, Jr., and James T. McNally, Deputy Attorneys General, for Respondent.

**OPINION**

**FRIEDMAN, Acting P. J.**—In December 1966 petitioner Greenfield was convicted of second degree burglary (Pen. Code, §§ 459-461) and receiving stolen goods (Pen. Code, § 496). Because both offenses grew from a single transaction, sentence on the latter count was suspended. Greenfield

appealed. On June 3, 1968, his conviction was affirmed by the Court of Appeal, Second District, Division One. (*People* v. *Greenfield,* 262 Cal. App.2d 682 [69 Cal.Rptr. 61].) The appellate court denied a rehearing and the Supreme Court denied a petition for hearing. Now an inmate at Folsom State Prison, Greenfield seeks habeas corpus, alleging constitutional infirmities in his conviction.

On August 30, 1966, Greenfield entered a department store in West Covina, selected $75.76 worth of wearing apparel and presented a stolen credit card. The store personnel became suspicious and called the police, who placed him under arrest. He had on his person a number of stolen credit cards. The facts are narrated in greater detail in *People* v. *Greenfield, supra.*

After a preliminary examination, an information was filed charging petitioner with three offenses: burglary, receiving stolen goods (i.e., the credit cards), and unauthorized use of another's credit card to obtain goods of a value exceeding $50, in violation of subdivision (b)(6) of Penal Code section 484a, the then existing credit card statute.[1]

At that point legal counsel in the case gave impetus to the first of a series of errors. Acting under Penal Code section 995, petitioner's counsel, a deputy public defender, moved the superior court to set aside count III, the credit card violation, on the ground that defendant had not actually succeeded in obtaining the merchandise, thus "that there was no corpus [delicti] established." The deputy district attorney conceded the merits of the motion. Asked by the court whether an order setting aside count III would be proper, he responded in the affirmative. The order was then made. Both attorneys and the court were seemingly unaware that section 484a,

---

[1]Section 484a was enacted by Statutes of 1961, chapter 813. At the time of petitioner's offense, section 484a, subdivision (b), provided in part:

"(b) Any person who:

"(1) . . . . . . . . . . . . .

"(2) Has in his possession . . . any . . . stolen credit card with the intent to use . . . the same . . . is guilty of a misdemeanor.

" . . . . . . . . . . . . . .

"(6) Knowingly uses or attempts to use for the purposes of obtaining goods, property, services or anything of value, a credit card which was obtained, or is held by the user, under circumstances which would constitute a crime under paragraphs (1), (2) or (3) of this subdivision, is also guilty of a misdemeanor if the total amount of goods, property or services or other things of value so obtained by such person does not exceed fifty dollars ($50), or is also guilty of a felony, if the total amount of goods, property or services or other things of value so obtained by such person exceeds fifty dollars ($50)."

In 1967 the Legislature repealed section 484a (Stats. 1967, ch. 1335) and enacted sections 484d through 484i, prescribing various credit card offenses. The new statute includes a provision disclaiming any intent to preclude application of other provisions of the criminal law to credit card offenses. (§ 484i.)

subdivision (b) (6), proscribed attempts to secure merchandise as well as completed acts.[2] The count should have been amended, not set aside. As we shall see, the court's action removed from the case the only charge whose validity is beyond question.

Defense counsel's motion to set aside was characterized by grave errors of omission. Over three years earlier *People* v. *Swann* (1963) 213 Cal. App.2d 447 [28 Cal.Rptr. 830], had established the proposition that Penal Code section 484a was a complete statement of all credit card offenses, thus precluding a credit card offender's prosecution under the general provisions of the Penal Code (in that case, the forgery statute). The state Supreme Court denied a hearing in the *Swann* case. In view of the *Swann* decision, petitioner's trial counsel had an excellent chance of establishing invalidity of the charge of receiving stolen credit cards and an arguable case for nullifying the burglary count as well. At no time during the trial court proceedings did he attack the validity of those charges. The jury found defendant guilty of both.

The parade of error by counsel continued on appeal. When defendant's appeal was filed, another attorney was appointed to represent him. While the appeal was pending and before petitioner's brief was filed, two more legal developments occurred. In March 1967 the Supreme Court decided *People* v. *Ali, supra.* The court's opinion stated (66 Cal.2d at p. 279): "Section 484a of the Penal Code was clearly intended to codify into one section all credit card offenses formerly prosecuted under various sections of the Penal Code; and, as a result of its enactment, a person charged with an offense involving a credit card may not be prosecuted therefor under the general statutes. (*People* v. *Swann,* 213 Cal.App.2d 447, 451 [2b] [28 Cal.Rptr. 830].)"

In October 1967 *People* v. *Churchill,* 255 Cal.App.2d 448 [63 Cal.Rptr. 312], was decided. Applying the *Swann-Ali* rationale, the court held that section 484a precluded a conviction under Penal Code section 496 for receiving stolen credit cards.

In February 1968, five years after the *Swann* decision, eleven months after the *Ali* decision, and four months after the *Churchill* case, petitioner's appeal brief was filed. A copy has been lodged here. Although the brief cited Hale's Pleas of the Crown, a classic eighteenth century work of British jurisprudence, it cited neither the *Ali, Swann* nor *Churchill* decisions of the California courts. Nor did petitioner's court-appointed counsel assert the rationale of those decisions. His brief made two contentions: (1) that one of the jurors had seen defendant in jail garb, and (2) that

---

[2]Some months later the Supreme Court so declared. (*People* v. *Ali* (1967) 66 Cal.2d 277, 279 [57 Cal.Rptr. 348, 424 P.2d 932].)

there was no evidence of intent to commit any crime when the accused entered the store, hence no evidence of a burglarious entry.

The opinion of the Court of Appeal, Second District, Division One, limited itself to disposition of the two flimsy issues raised by the attorney. It did not consider the law of California as established by such decisions as *People* v. *Swann* and *People* v. *Ali*.

On July 15, 1968, several days after expiration of the time permitted by rule 28(b), California Rules of Court, Greenfield filed a pro. per. petition for hearing in the state Supreme Court, pointing out that his attorney had not raised the preemption question and citing both the *Churchill* and *Swann* decisions. Nevertheless, on July 31, 1968, the Supreme Court denied a hearing.

■ In criminal cases California courts have recognized for a number of years that when, through ignorance or omission, defense counsel causes the loss of a crucial defense in the trial court, there has been a denial of the constitutional right to counsel, infecting the conviction with fundamental unfairness and requiring its reversal. (*In re Williams* (1969) 1 Cal.3d 168, 174-175 [81 Cal.Rptr. 784, 460 P.2d 984]; *People* v. *McDowell* (1968) 69 Cal.2d 737, 746-750 [73 Cal.Rptr. 1, 447 P.2d 97]; *People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) When incompetent representation by court-appointed counsel causes loss of a crucial defense on appeal, a similar result must follow.[3] ■ It must follow because the state is constitutionally obliged to furnish counsel whose advocacy permits full consideration and resolution of crucial issues. (See *Anders* v. *California* (1967) 386 U.S. 738, 743-744 [18 L.Ed.2d 493, 497-498, 87 S.Ct. 1396]; *People* v. *Feggans* (1967) 67 Cal.2d 444, 447-448 [62 Cal.Rptr. 419, 432 P.2d 21].)

■ When the failure of representation occurs in the trial court, the judgment will be reversed on appeal or vacated by a writ of habeas corpus (e.g., *People* v. *Ibarra, supra; In re Williams, supra*). When the failure occurs at the appellate level, a court which has power to do so will recall the remittitur or order its recall. (See *In re Saunders* (1970) 2 Cal.3d 1033, 1049 [88 Cal.Rptr. 633, 472 P.2d 921]; *In re Smith, supra,* at p. 858, fn. 3.) ■ In petitioner's case the remittitur was issued by Division One of the Court of Appeal of the Second Appellate District. Since we have no control over the remittitur issued by another court of appeal, our course of action will be determined by the level at which we find the occurrence of inadequate representation, if any. ■ We shall

---

[3]The California Supreme Court so held in *In re Smith,* 2 Cal.3d 850, 855-856 [87 Cal.Rptr. 687, 471 P.2d 8], filed July 9, 1970. On July 30, 1970, the court extended through October 6, 1970, its time for granting or denying a rehearing in the *Smith* case.

hold that petitioner was denied adequate representation both in the trial court and on appeal.

The count charging petitioner with receiving stolen property fell directly, irrefragably and obviously under the *Swann* and *Ali* decisions. Later, the *Churchill* decision was to hold specifically what *Swann* had implied— that the offense of receiving stolen credit cards was a misdemeanor violation of section 484a, subdivision (b) (2), not a felony violation of section 496. Had petitioner's trial attorney or his appeal attorney raised the defense first enunciated in *Swann*, the receiving offense would have been reduced from a felony to a misdemeanor.[4]

 *In re Williams, supra,* 1 Cal.3d 168, is precisely in point. There a deputy public defender, ignorant of the *Swann* case, had permitted a fraudulent credit card user to plead guilty to forgery, a felony. As the Supreme Court observed, the client "went to prison for the crime of forgery he did not commit." (1 Cal.3d at p. 173.) In like fashion, petitioner Greenfield was convicted of receiving stolen property, a felony he did not commit.

Petitioner's ability to defeat the burglary charge is not so clear. Had his court-appointed attorney on appeal exercised minimal competence, he could have banked heavily on the Supreme Court's declaration in *People* v. *Ali, supra,* 66 Cal.2d at page 279, that section 484a covered "all credit card offenses formerly prosecuted under various sections of the Penal Code. . . ." Subsequent to *Ali,* the *Churchill* case (255 Cal. App.2d at pp. 453-454) held a defendant liable for burglary prosecution when he entered a place of business with intent to violate those portions of section 484a constituting a felony, that is, to procure goods worth more than $50. On the other hand, *People* v. *Scott* (1968) 259 Cal.App.2d 589, 592 [66 Cal.Rptr. 432], held a burglary conviction improper and the credit card offender guilty of no more than a misdemeanor when he entered with an intent to obtain merchandise worth less than $50. No Supreme Court hearing was sought in either *Churchill* or *Scott.* The *Scott* decision did not cite *Churchill.* More recently, *In re Williams, supra,* 1 Cal.3d at page 173, cited both *Churchill* and *Scott* without noting their possible inconsistency.

Thus, although the negligence of petitioner's appeal attorney excluded

---

[4]Receiving stolen goods under the general statute entails a maximum prison term of 10 years. (Pen. Code, § 496.) A misdemeanor violation of section 484a, subdivision (b) (2), in contrast, entailed a maximum jail term of six months or a $500 fine or both. (Pen. Code, § 19.) Second degree burglary, of which petitioner stands convicted, carries a maximum sentence of 15 years. (Pen. Code, § 461.) A felony violation of section 484a would have carried a maximum term of five years. (Pen. Code, § 18.)

from the appeal a substantial and arguable defense to the burglary conviction, there is a real question whether the defense was *crucial*. Possibly, when the reviewing court is put to the impossible task of predicting how a jury might respond to the defense, reversal should occur where the incompetent advocate precluded inquiry into a defense which is substantial but not necessarily determinative. ■ ". . . whether the demands of due process have been met in a particular case is always 'a question of judgment and degree' to be answered in light of all of the circumstances and with a view to 'fundamental fairness'. . . ." (*In re Saunders, supra,* 2 Cal.3d at p. 1041; see *In re Smith, supra,* at p. 858, fn. 3.) Here, the crucial quality of petitioner's defense to the burglary charge turns on a question of law which this court can and should decide.

■ This court disagrees with that portion of *People* v. *Churchill, supra,* which placed a burglary prosecution outside the preemptive ambit of former section 484a. In *People* v. *Ali, supra,* the court explicitly declared that section 484a embraced all credit card offenses and in *People* v. *Swann, supra,* the court so implied. Indeed, the *Swann* decision relied upon *In re Joiner,* 180 Cal.App.2d 250 [4 Cal.Rptr. 667], which held the preemption concept applicable to bar a burglary prosecution even though defendant's entry into the building was accompanied by a set of intentions at the grand theft level. An attempt to follow both the *Churchill* and *Scott* decisions would compel the court to attribute to the Legislature an intent to fasten a 15-year maximum prison term on the culprit who walked into an open store in broad daylight with the intent to swindle the owner out of $51 in merchandise and a six-month maximum jail term on the offender with his mind fixed on a $49 item. Such an appraisal of legislative intent is unpalatable. We take the Supreme Court's declaration in *People* v. *Ali* at face value and hold that, while it was in force, section 484a preempted the violator's prosecution under the general burglary statute.

Thus the inexcusable neglect of petitioner's court-appointed attorney on appeal excluded a crucial defense from the appeal. It was crucial because it would have required reversal of the burglary conviction. ■ Had either his trial attorney or his appeal attorney made the contentions which should have been made, petitioner would have suffered, at worst, a felony conviction of section 484a and not the felonies of burglary and receiving stolen property. He would be serving a five-year rather than a 15-year maximum term. (See fn. 4, *supra.*)

■ The inexcusable carelessness which characterized the conduct of counsel impels abandonment of conventional blandness. In these cases of crucially inadequate representation appellate courts are reluctant to wound the sensibilities of the attorneys, particularly because youth and comparative inexperience characterize much of the criminal bar in Cali-

fornia today. Nevertheless, we wrong our system of justice when we fail to point out reparable malfunctions such as the present. A half hour of rudimentary research—resort to a citator, a digest, an annotated code—would have revealed a defense crucial to petitioner's cause. Similar research would have apprised the prosecutor's office of the case law which should have shaped the accusatory pleading. No profession depends upon its books so deeply and vitally as the law. Only the smallest lawyer is too big to use law books.

A litigating lawyer must make many choices. Visible and invisible pitfalls surround him. The attorneys who represented petitioner failed to take the most elementary precaution—an investigation of easily discoverable case law. Their failures reduced his trial and appeal to a farce and a sham. (Cf. *People* v. *Ibarra* (1963) 60 Cal.2d 460, 464-466 [34 Cal.Rptr. 863, 386 P.2d 487].)

We would deal with symptoms and ignore the malady were we to limit criticism to the attorneys. Their blunders were so egregious as to prompt self-scrutiny by the courts, licensing authorities and law schools whose combined auspices turned loose such ineptness. The routine work of an appellate court discloses wide variations in the quality of professional services supplied by litigating lawyers. When the quality of representation is not in issue, both excellence and inferiority go unremarked. In representing indigent criminal appellants, many court-appointed attorneys display praiseworthy capability and zeal. Others are saved from disaster by the care of the court and its research staff.

Broad criticism of the educational and licensing authorities should not rest on the narrow statistical base supplied by three careless lawyers, even though jammed within the confines of a single prosecution. Actual experience demonstrates that the statistical base is sufficiently broad to evoke pressure for its reduction. Fatal or not, legal malpractice in criminal cases is all too common.[5] Amid the pressures of teaching, testing and licensing,

---

[5]One calls to mind the lament of the present Chief Justice of the United States when he addressed the American College of Trial Lawyers in 1967: "I find no pleasure in saying that the majority of lawyers who appear in court are so poorly trained that they are not properly performing their job and that their manners and their professional performance and their professional ethics offend a great many people. . . . On the most favorable view expressed, 75 percent of the lawyers appearing in the courtroom were deficient by reason of poor preparation, inability to frame questions properly, lack of ability to conduct a proper cross examination, lack of ability to present expert testimony, lack of ability in the handling and presentation of documents and letters, lack of ability to frame objections adequately, lack of basic analytic ability in the framing of issues, lack of ability to make an adequate argument to a jury. Also very high on the list of deficiencies was the lack of an understanding of basic courtroom manners and etiquette, and a seeming unawareness of many of the fundamental ethics of the profession." (Burger, Warren J., *A Sick Profession* (adopted from a 1967 address to the American College of Trial Lawyers) (Oct. 1969) Wis. Bar Bull., pp. 7-8.)

the spirit of the profession is apt to be neglected. Depersonalization and shallowness are acute dangers in the mills of criminal justice in our metropolitan centers. Somehow these lawyers missed the elementary notion that a member of the bar must use diligence and care in representing his client. (See pp. 73-75, Final Draft, Code of Professional Responsibility, Special Com. on Evaluation of Ethical Standards, Am. Bar Assn.)

In recent years the federal Supreme Court has given new vitality and breadth to the Sixth Amendment's guarantee of counsel during pretrial confrontations,[6] at the trial stage[7] and on appeal.[8] The Sixth Amendment silently postulates the virtues of the adversary system of justice. The vigor of the Sixth Amendment and the vitality of the adversary system depend upon the competence of the adversaries. Both are emasculated when attorneys fall short of acceptable competence.[9]

Petitioner was so inadequately represented in the trial court and on appeal that he was not accorded the effective assistance of counsel demanded by the Sixth and Fourteenth Amendments. ▪▪▪ The court which heard his appeal could now do nothing but recall the remittitur, reverse the judgment and remand the case for further proceedings in the trial court. Acting under its habeas corpus power to dispose of the case as justice may require, this court can accomplish an equivalent result. (Pen. Code, § 1484.) The trial court has before it a body of evidence and a verdict on the basis of which the defendant's guilt under the applicable statutes may be adjudicated. Alternatively, he might seek a new trial or

---

[6]*United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926].

[7]*Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]; *Gideon* v. *Wainwight* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733].

[8]*Douglas* v. *California* (1963) 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814]; *Anders* v. *California* (1967) *supra,* 386 U.S. 738.

[9]The competence of the advocate as the underpinning of the adversary system has been described by the eminent Scottish barrister, Baron Macmillan: "[T]he most effectual and only practicable method of arriving at the rights of a dispute is by critical debate in the presence of an impartial third party, where every statement and argument on either side is submitted to the keenest scrutiny and attack. Where every step on the way to judgment has been tested and contested, the chance of error in the ultimate decision is reduced to a minimum. The better the case is presented on each side, and the keener and more skilful the debate before him, the more likely is it that the judge will reach a just and sound judgment. That is why it has been said that a strong Bar makes a strong Bench. It is, then, as contributing an essential element to the process of the administration of justice that the profession of the advocate discharges a public function of the highest utility and importance. Alike to the citizen seeking justice and to the Courts administering it, the existence of a class of trained advocates possessing knowledge of the law, skill in the orderly presentation of facts, cogency in logical argument, and fairness and moderation in controversy, is indispensable." (Rt. Hon. Lord Macmillan (Hugh P.), *The Ethics of Advocacy,* reprinted in Jurisprudence in Action (1953) p. 311.)

arrest of judgment. (See Pen. Code, §§ 1181, 1185, 1201.) Accordingly, we order the warden of the state prison to return petitioner to the custody of the Superior Court in and for the County of Los Angeles and direct that court to vacate its judgment, provide petitioner with counsel and to take further proceedings not inconsistent with this opinion.

Janes, J., concurred.

Regan, J., concurred in the result.

Respondent's petition for a hearing by the Supreme Court was denied December 10, 1970.