109 Cal.Rptr.2d 290 (2001)
90 Cal.App.4th 853
The PEOPLE, Plaintiff and Respondent,
v.
Jerry Wayne MORGAN, Defendant and Appellant.
No. C030469.
Court of Appeal, Third District.
July 16, 2001.
Rehearing Granted August 15, 2001.
*292 S. Lynne Klein, under appointment by the Court of Appeal, Los Angeles, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Senior Assistant Attorney General, Carlos A. Martinez and Virna DePaul, Deputy Attorneys General, for Plaintiff and Respondent.
*291 BLEASE, Acting P.J.
This case involves the validity of defendant's admission of two 30-year-old felony convictions, as "strikes," charged as violations of a section of the Arkansas criminal statutes which did not exist at the time of the alleged convictions.
On the day scheduled for trial defendant pleaded no contest to inflicting corporal injury on a cohabitant (Pen.Code, § 273.5, *293 subd. (a))[1] and admitted, as "strikes" (§ 1170.12), two Arkansas kidnapping convictions, charged as violations of "Section 5-11-102 of the Arkansas Criminal Code...." In return for his plea, the remaining count of arson (§ 451, subd. (b)) and two other counts alleged as strikes, were dismissed. The trial court, in the absence of the record of the Arkansas convictions, denied relief under People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628 and imposed a term of 25 years to life in state prison.
We appointed counsel to represent defendant on appeal. Counsel filed an opening brief setting forth the facts of the case and requested review by this court pursuant to People v. Wende (1979) 25 Cal.3d 436, 158 Cal.Rptr. 839, 600 P.2d 1071. Defendant was advised by counsel of the right to file a supplemental brief and did so, raising 10 issues, challenging inter alia the validity of his plea. Appellate counsel filed briefs in response to an inquiry from this court concerning defendant's prior convictions and obtained a certificate of probable cause from the trial court.[2]
We have reviewed the record for error. We hold, given the serious penal consequences of the "Three Strikes" law, that it is the duty of defendant's counsel, in advance of a plea or trial predicated upon convictions charged as strikes, to determine, on the basis of records which are necessary to an informed decision, whether the convictions are strikes under the California law, to advise his or her client accordingly, and that it is ineffectiveness of counsel to fail to do so.
We conclude that trial counsel was ineffective in failing, before the entry of plea, to obtain the records of the out-of-state convictions, from which it could be determined whether they were strikes under the California law. In the absence of that record, as the trial court noted, "nobody in this courtroom really has an idea of what occurred in ... Arkansas that gave you those convictions." As a consequence, counsel for the defendant permitted his client to admit to convictions as strikes under an Arkansas law which did not apply to his offenses. Accordingly, we find there is a probability of a different outcome sufficient to undermine our confidence in the outcome of the plea bargain. In view of defendant's request to vacate the plea, the remedy is to restore the case to the point in the proceedings prior to the entry of plea.
Accordingly, we will reverse the judgment and sentence, set aside the plea, and remand the case for proceedings consistent with this opinion.

FACTS AND PROCEDURAL BACKGROUND

I

The Facts of the Present Offense
The facts of the present offense are taken from the preliminary hearing. On December 11, 1997, Officer Michael Stufflebeam of the Redding Police Department interviewed Virginia Morgan, defendant's *294 common-law wife. She told Stufflebeam she and defendant had an argument the previous day. Defendant slapped Virginia in the face a couple of times. She became afraid and called "911." Defendant insisted they leave their residence. They began driving south on Interstate 5. Just north of Red Bluff, defendant struck Virginia in the face three times with his fist. She stopped the car on the off-ramp and got out. Defendant moved behind the wheel and drove off. Officer Stufflebeam observed bruising and swelling underneath Virginia's right eye.

II

The Plea Bargain
Defendant, 53 years old at the time of sentence, was charged by a complaint, filed December 18, 1997, which alleged inter alia that he inflicted corporal injury on a cohabitant and that he suffered two prior kidnapping convictions. The first was a conviction of "the crime of Kidnapping, in violation of Section 5-11-102 of the Arkansas Criminal Code, case no. 2434, occurring in the County of Poinsett, State of Arkansas, on or about the 9th day of October, 1970, within the meaning of Penal Code Section 1170.12." The second was a conviction of "the crime of Kidnapping, in violation of Section 5-11-102 of the Arkansas Criminal Code, case no. 2435, occurring in the County of Poinsett, State of Arkansas, on or about the 8th day of March, 1971, within the meaning of Penal Code Section 1170.12." The complaint was deemed an information and a copy was provided defendant's counsel. A trial date was scheduled on February 27, 1998. The district attorney informed the court the trial could "go to a fourth [day] because of issues on the priors ...."
On March 3, 1998, the parties appeared for trial and defendant's counsel informed the court that "[t]he three strikes is an issue." The defendant then made a Marsden motion (People v. Marsden (1970) 2 Cal.3d 118, 84 Cal.Rptr. 156, 456 P.2d 44). He complained he had been in custody for 77 days and had been visited by his attorney only three times. A Marsden hearing was held. Defendant's counsel informed the court that defendant's "primary objection, and his lack of understanding, has related to the three strikes law." He said he informed defendant that "the time. to attack the strikes would be a matter of sentencing, under Romero. That the District Attorney was having difficulty obtaining the paperwork from the State of Tennessee and the State of Arkansas and I could not make the motion without that kind of paperwork. And I certainly would have that paperwork in time for the trial. And as a matter of fact [the district attorney had just] produced ... the bulk of the paperwork...." Defendant complained: "I have severe problems with this man representing me for something that I may end up with 25 to life because he hasn't done his job in the last 77 days at all."
The court asked defendant's counsel: "Have you had the opportunity to evaluate whether or not these priors can be attacked in any fashion?" Counsel replied: "Well, I've examined them. The answer is yes. And they do have the certified judgments...." The court then asked counsel: "Have you made a determination ... whether the elements [of the out-of-state convictions] are the same as the elements in California?" Counsel answered "No." The Court: "Is that something you intend to do?" Answer: "Yes." The court denied the Marsden motion.
On the same day, March 3d, following the denial of the Marsden motion, defendant appeared in court with his counsel and entered a plea bargain. Defendant stated his desire to accept a plea bargain. He then pleaded no contest to one count of spousal abuse (§ 273.5) and admitted *295 charges of two convictions for kidnapping in Arkansas in 1970 and 1971, subject to review pursuant to People v. Romero. A charge of arson and two other alleged strikes were dismissed as part of the plea bargain. At the time of the entry of plea the defendant was informed his "maximum punishment" was 25 years to life in state prison, but that it could be less if the court granted his "Romero" motion.
In taking the plea, the trial court noted the two kidnapping allegations, which he described as "a conviction suffered March 8, 1971, in the State of Arkansas, a kidnapping felony charge, and the second is another Arkansas kidnapping charge suffered October 8th, 1970." He asked defendant whether he would admit them and he answered:
"If there are two strikes, I got them, I guess. I got them. I'm guilty of what's on that piece of paper [the complaint].... When I read them, ... I know what it's all about. You just read it to me."
Defendant then signed a change of plea form in which he pleaded no contest to "Count 2, P.C. 273.5" and admitted "Special Allegations 2 & 3 (P.C. 1170.12)" described as "(Kidnapping: 2 Strikes)" Later, the defendant admitted as true that he suffered a felony conviction for kidnapping in "Poinsett County, Arkansas, on March 8, 1971" and another "conviction for that on October 9th, 1970...." No other details were set forth in taking the plea.
Five weeks later, on April 9, 1998, defendant appeared for sentencing. His counsel informed the court that, because of the age and out-of-state location of the priors, he had not been able to obtain information regarding the convictions and needed a continuance to obtain them. Notwithstanding the court's willingness to grant a continuance, defendant requested sentencing immediately.
In an attempt to persuade defendant to waive time for sentencing until the out-of-state information could be obtained, the court informed defendant that a hearing under Romero would not be possible after sentencing, and that, as circumstances then stood, the court intended to follow the probation officer's report and impose a 25to-life term. The court also informed defendant that "based on the record before [the court]," the court was not going to strike the priors.
In sentencing defendant the trial judge relied upon a cryptic probation report that cites to no provision of the Arkansas Criminal Code and includes no details regarding the priors. It purports to set forth "a synopsis of FBI record, as well as State of Arkansas ... records," which consist of no more than that on "10/9/70" in "Poinsett County Circuit Court, AR 2434, 2435, 2436" defendant was convicted of "kidnap., 3 cts" and was sentenced "17 yrs Ark. Dept. of Corrections", from which he was "paroled 1/25/72." This is at variance with the complaint, as to the dates and number of offenses.
Regarding the motion to strike the priors, the judge said "I want to see what really happened in Tennessee and Arkansas those many years ago. I want to know what your record is between that time and now. All of those factors. I don't have any of those factors in front of me other than I know you have some serious priors, but they were a long time ago. And given that distance in time, nobody in this courtroom really has an idea of what occurred in Tennessee and/or Arkansas that gave you those convictions. So that's what they want to look at. [¶] So the answer is no, it's in my discretion to grant a Romero motion, but I can't exercise that discretion until I can look at what occurred in Tennessee and Arkansas and take a good look at your record between that time and...."
*296 The court further said that, because the priors were quite old, if the court had the additional information sought by counsel regarding the priors and defendant's interim record, the court might strike either or both of them. Notwithstanding these warnings from the court, defendant adamantly refused to waive time. The court then "declined" to strike either of the priors and sentenced defendant to a term of 25 years to life.
This appeal followed.

DISCUSSION

I

The Arkansas Convictions

Arkansas Statutes Annotated Section 5-11-102
The Three Strikes law provides in pertinent part that "[a] prior conviction of a particular felony shall include a conviction in another jurisdiction for an offense that includes all of the elements of the particular felony as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7." (§§ 667, subd.(d)(2); 1170.12, subd. (b)(2).) Because defendant's current offense occurred in 1997, the validity of an out-of-state prior felony conviction as a "strike" is determined by comparing the applicable California "statute[] as [it] existed on June 30, 1993" (§ 667, subd. (h); Initiative (Prop.184) § 2, Nov. 8, 1994) with the law of the foreign state applicable on "the date of th[e] prior conviction" (§ 1170.12, subd. (b)(1); § 667, subd. (d)(1)).[3] The law applicable on the date of conviction necessarily is the law in effect at the time of the offense.
As noted, defendant admitted, as "strikes" (§ 1170.12), two Arkansas kidnapping convictions, charged as violations of "Section 5-11-102 of the Arkansas Criminal Code...."[4] It appears that section 5-11-102 was first enacted in 1975, four or five years after the alleged dates of defendant's convictions.[5] The section provides, in pertinent part: "(a) A person commits the offense of kidnapping if, without consent, he restrains another person so *297 as to interfere substantially with his liberty with [a specified] purpose...."[6] (Ark. Acts (1975) No. 280, § 1702.)
Section 5-11-102 was not in effect at the time of defendant's Arkansas kidnapping convictions and manifestly cannot be the statute under which defendant was charged and convicted. Moreover, section 5-11-102 would not facially qualify as a strike under the California law of kidnapping.
In the absence of the underlying record, the test whether the out-of-state offense counts as a strike is measured by the least adjudicated elements of the out-of-state offense. In People v. Guerrero (1988) 44 Cal.3d 343, 243 Cal.Rptr. 688, 748 P.2d 1150, the Supreme Court held that "the [trial] court may look to the entire record of the conviction to determine the substance of the prior foreign conviction; but when the record does not disclose any of the facts of the offense actually committed the court will presume that the prior conviction was for the least offense punishable under the foreign law." (Id. at pp. 354-355, 243 Cal.Rptr. 688, 748 P.2d 1150, emphasis added; see also People v. Myers (1993) 5 Cal.4th 1193, 1200, 22 Cal.Rptr.2d 911, 858 P.2d 301.)
The Arkansas statute materially differs from section 207 of the California law, in effect in 1993, which defines kidnapping inter alia to require asportation.[7] (People v. Martinez (1999) 20 Cal.4th 225, 235, 83 Cal.Rptr.2d 533, 973 P.2d 512.) The crime described in section 5-11-102 lacks that element. It defines a form of aggravated false imprisonment. "The [Arkansas] Code speaks in terms of restraint rather than removal. Consequently, it reaches a greater variety of conduct, since restraint can be accomplished without any removal whatever." (Ark.Code Revision Comm. orig. com., to § 5-11-102 (1995 Repl.) p. 176.)
We do not know on this record under what statutes the defendant was actually convicted 30 years ago in Arkansas nor the "substance of the prior foreign conviction[s]...." In the absence of the Arkansas record it cannot be determined whether they count as strikes under the California law.

II

Ineffectiveness of Counsel
"The pleadingand plea bargainingstage of a criminal proceeding is a critical stage in the criminal process at which a defendant is entitled to the effective assistance of counsel guaranteed by the federal and California Constitutions [Citation.]." (In re Alvernaz (1992) 2 Cal.4th 924, 933, 8 Cal.Rptr.2d 713, 830 P.2d 747; In re Vargas (2000) 83 Cal. App.4th 1125, 1133, 100 Cal.Rptr.2d 265.) "Before entering his plea [a defendant is] `entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as what plea should be entered.' [Citation.]" (In re Williams (1969) 1 Cal.3d 168, 175, 81 Cal.Rptr. 784, 460 P.2d 984.) "If counsel's *298 `failure [to undertake such careful inquiries and investigations] results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled.'" (In re Saunders (1970) 2 Cal.3d 1033, 1042, 88 Cal.Rptr. 633,472 P.2d 921; citations omitted.)
Defendant's plea in this case occurred on the day of trial, March 3, 1998, when counsel should have been prepared to defend against the charges of convictions which qualify as strikes under the California law. He manifestly was not prepared. He informed the court that he had not determined "whether the elements [of the out-of-state convictions] are the same as the elements in California." Notwithstanding, he allowed his client to enter into a plea bargain which admitted two convictions as strikes under an Arkansas law which did not exist at the time of the convictions and which did not contain the same elements as the California law of kidnapping. Some five weeks later on April 9, 1998, at the time of sentencing, counsel had still not obtained the records of the Arkansas convictions.
It is apparent from the record that, at the time of the plea, defendant's counsel had not read section 5-11-102 of the Arkansas Criminal Code, nor had he obtained the record from which it could be determined under which Arkansas law the 30 year old kidnapping convictions had occurred and from which it could be determined whether the convictions complied with the California law of strikes. (See fn. 5, ante.)
This is not a case in which counsel's performance can be excused on the ground he made a tactical decision. That claim arises only where counsel "having made [the required] inquiries and investigations, makes tactical or strategic decisions...." (In re Saunders, 2 Cal.3d at p. 1042, fn. 7, 88 Cal.Rptr. 633, 472 P.2d 921; orig. emphasis; citations omitted.) But when, as here, "the knowledge necessary to an informed tactical or strategic decision is absent because of counsel's ineptitude or lack of industry, no such ground of justification is possible. (In re Williams, supra, 1 Cal.3d 168, 177, 81 Cal.Rptr. 784, 460 P.2d 984.)" (Ibid., orig. emphasis.)
Although it must be demonstrated that, absent counsel's deficiencies, there is a reasonable probability of a more favorable outcome, the test does not require that "`counsel's conduct more likely than not altered the outcome in the case,' but simply [requires a showing of] `a probability sufficient to undermine confidence in the outcome.'" (In re Cordero (1988) 46 Cal.3d 161, 180, 249 Cal.Rptr. 342, 756 P.2d 1370; citation omitted.)
Since counsel had not investigated the critical facts whether any of the prior convictions alleged in the complaint complied with the California Three Strikes law and allowed or advised his client to admit to convictions under an inapplicable statute, and since it is not possible to determine the outcome of a trial or plea bargain conducted on the basis of adequate information, our confidence in the outcome of the plea bargain has been thoroughly undermined.
In this circumstance, the remedy required by law is to reverse the judgment and sentence, vacate the defendant's plea, and remand the case to the trial court for further proceedings. (See People v. Serrato (1973) 9 Cal.3d 753, 765, 109 Cal.Rptr. 65, 512 P.2d 289; In re Sutherland (1972) 6 Cal.3d 666, 671-672, 100 Cal.Rptr. 129, 493 P.2d 857; People v. Daniels (1969) 71 *299 Cal.2d 1119, 1143, 80 Cal.Rptr. 897, 459 P.2d 225.)

DISPOSITION[8]
The judgment and sentence are reversed and defendant's plea is set aside. The case is remanded to the trial court for proceedings consistent with this opinion.
SIMS, J., and HULL, J., concur.
NOTES
[1] A reference to a section is to the Penal Code unless otherwise designated.
[2] We requested briefing from counsel on the following questions: (1) Should the trial court have exercised his discretion to determine whether to strike the 1970 and 1971 convictions under People v. Superior Court (Romero), supra, 13 Cal.4th 497, 53 Cal.Rptr.2d 789. 917 P.2d 628, (2) did defendant waive the exercise of such discretion, and (3) did counsel for defendant fail to act as a diligent counsel, (a) in advising defendant of the consequences of two prior strikes and, (b) in failing to move to strike the priors.
[3] The June 30, 1993, date was changed to March 8, 2000, by virtue of Proposition 21, adopted at the March 8, 2000, primary election. Section 667.1, enacted by Initiative, and operative March 8, 2000, provides:

"Notwithstanding subdivision (h) of Section 667, for all offenses committed on or after the effective date of this act, all references to existing statutes in subdivisions (c) to (g), inclusive, of Section 667, are to those statutes as they existed on the effective date of this act, including amendments made to those statutes by this act."
Section 1170.125, enacted by the same Initiative, provides:
"Notwithstanding Section 2 of Proposition 184, as adopted at the November 8, 1994 General Election, for all offenses committed on or after the effective date of this act, all references to existing statutes in Section 1170.12 are to those statutes as they existed on the effective date of this act, including amendments made to those statutes by this act."
[4] The correct reference is to Arkansas Statutes Annotated. The Arkansas Code is to Title 5, thereof, entitled "Criminal Offenses."
[5] Section 5-11-102 was first enacted in 1975. (Ark.Acts, 1975, No. 280, § 1702.) Prior to that date, from 1937 to 1971, kidnapping was the subject of sections 41-2301 to 41-2305 of the Arkansas Criminal Code. (Ark. Acts, 1937, No. 20, §§ 1,2; Rev. Stat., ch. 44, div. 3, art. 7, §§ 1, 2.) These sections were repealed in 1971 and replaced with sections 41-2306 to 41-2309. (Ark. Acts 1971, No. 45, §§ 1-5, p. 185, approved February 4, 1971.) These sections appear to differ in significant respects from the California kidnapping law in effect in 1993. We cannot tell from the date of enactment of the 1971 statute whether it was applicable to either of the defendant's convictions under the Arkansas anti-abatement statute. (Ark. Stat., § 1-104 (1956 Repl.))
[6] Section 5-11-102 provides, in pertinent part: "(a) A person commits the offense of kidnapping if, without consent, he restrains another person so as to interfere substantially with his liberty" for specified purposes including for example ransom or the facilitation of a felony.
[7] In 1993, as now, section 207, subdivision (a) provided as follows:

"(a) Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping."
[8] The disposition makes it unnecessary to consider the defendant's assignments of error.