Filed 8/27/15  P. v. Gervais CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066318 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD254225) |
| NICHOLAS GERVAIS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert F. O'Neill, Judge.  Affirmed.

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Susan E. Miller and Elizabeth M. Carino, Deputy Attorneys General, for Plaintiff and Respondent.

Nicholas Gervais pleaded guilty to gross vehicular manslaughter while intoxicated, driving under the influence of alcohol causing bodily injury, driving with a

blood alcohol level of .08 percent or more causing injury, and driving under the combined influence of alcohol and a drug and causing injury.  He also admitted to enhancements for infliction of great bodily injury on John Hajosy, infliction of great bodily injury on Justin Vogt, infliction of bodily injury to more than one victim, and having a blood alcohol concentration of .15 percent or more.  The trial court sentenced Gervais to 11 years and eight months in prison.  He appeals, contending his public defender provided ineffective assistance by failing to make efforts to have Gervais plead guilty before the prosecutor amended the complaint against him to add sentencing enhancement allegations for infliction of great bodily injury.

FACTUAL AND PROCEDURAL BACKGROUND

This case stems from an incident in which Gervais drove the wrong way on two freeways and eventually collided head on with a vehicle driven by Hajosy.  Hajosy died at the scene.  Gervais's passenger, Vogt, was seriously injured in the accident.  Gervais admitted that he drank alcohol and smoked marijuana before driving.  He had a blood alcohol concentration of .25 percent several hours after the collision.

On February 26, 2014, the People filed a complaint charging Gervais with gross vehicular manslaughter while intoxicated, driving under the influence of alcohol causing injury, driving with a blood alcohol level of .08 percent or more causing injury, and driving under the combined influence of alcohol and drugs and causing injury.  (All further date references are to the year 2014.)  That same day, Gervais was arraigned and pleaded not guilty to the charges.  The court appointed him a public defender.

2

On March 3, Gervais withdrew his request for bail review. Two days later, the deputy district attorney assigned to the case provided some discovery to the public defender. On March 7, the court held a readiness conference. Gervais had not met with his public defender, Brian Dooley, until that day. They only talked for approximately five minutes. Dooley informed Gervais that his maximum exposure was 10 years, eight months in prison and that the district attorney had not offered a plea bargain. According to Gervais, he planned to plead guilty at the readiness conference, but Dooley told him to "'go along with the process.'" Additionally, Dooley did not inform Gervais that he could plead guilty without a plea agreement.

On March 17, the deputy district attorney e-mailed Dooley and informed him that she would be amending the charges against Gervais to add great bodily injury allegations. Thereafter, the deputy district attorney provided Dooley with further discovery.

On March 22, Gervais retained Robert Boyce to represent him. Gervais informed Boyce that he wanted to plead guilty to the charges alleged in the complaint. Two days later, Boyce contacted the deputy district attorney who informed Boyce that she planned to amend the complaint to allege sentencing enhancements. On March 28, Boyce substituted in as attorney of record for Gervais and the district attorney amended the complaint. As relevant here, the amended complaint added great bodily injury allegations to the charges of driving under the influence of alcohol causing bodily injury, driving with a blood alcohol level of .08 percent or more causing injury, and driving under the combined influence of alcohol and a drug and causing injury.

3

On the day the district attorney filed the amended complaint, Gervais pleaded not guilty to it. Approximately a month later, Gervais moved to plead guilty to the charges in the original complaint. He argued Dooley provided ineffective assistance by failing to advise him that he had the option to plead guilty to the original complaint. He presented evidence that he told Boyce and his mother that he had wanted to plead guilty before the complaint was amended. In a declaration, Boyce stated that he spoke to Dooley who informed him that he did not meet with Gervais before the initial readiness conference, suspected the district attorney would amend the complaint to allege enhancements, and did not think of advising Gervais "'to plead to the sheet.'" Boyce prepared a declaration for Dooley to sign stating that Dooley knew there was a possibility that the district attorney could amend the complaint to add sentencing enhancements and did not discuss pleading guilty to the initial complaint with Gervais in order to avoid increased punishment. Dooley declined to sign the declaration.

The People opposed Gervais's motion and the trial court denied it. The court found Dooley had not provided ineffective assistance and had not acted below the standard of care. Rather, the court noted that Dooley would have provided ineffective assistance had he advised Gervais to plead guilty without completely receiving and evaluating the discovery. Lastly, the court concluded Gervais was not prejudiced because there was no plea bargain offered and, even if Gervais had wanted to plead guilty to the original complaint, the People would have objected to the plea. Thereafter, Gervais pleaded guilty to the charges and allegations in the amended complaint.

4

DISCUSSION

Gervais argues Dooley provided ineffective assistance by failing to make efforts to have Gervais plead guilty at the March 7 readiness conference, which was before the prosecutor amended the complaint. Gervais contends that, as a result of the amendment adding great bodily injury allegations, his sentence was increased from 10 years and eight months to 11 years and eight months and he was subject to a conduct credit limitation of 15 percent rather than 50 percent (Pen. Code, §§ 667.5, subd. (c)(8), 1170.1, subd. (a), 2933.1). Consequently, Gervais must actually serve approximately nine years and 10 months, rather than five years and four months in prison.

"An appellant claiming ineffective assistance of counsel has the burden to show: (1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance resulted in prejudice." (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1146-1147; *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*) [setting out two-pronged test for assessing ineffective assistance of counsel claims as requiring showing of deficient performance and resultant prejudice].)

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

5

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citation.]" (*Strickland*, *supra*, 466 U.S. at p. 689.) Likewise, "[i]n considering the effectiveness of counsel at the pleading stage, we should not judge attorneys by the harsh light of hindsight, but we must determine whether the appointed counsel at the time was 'reasonably likely to render, *and* [was] *rendering*, reasonably effective assistance.'" (*In re Williams* (1969) 1 Cal.3d 168, 176.) A claim of ineffective assistance of counsel fails if the "record does not demonstrate there could be no rational tactical reason for [an] omission." (*People v. Lucas* (1995) 12 Cal.4th 415, 437, 442.)

Here, Gervais contends that a reasonably competent attorney would have either reviewed the police reports or discussed the case with him and, based thereon, ascertained that "realistically, there would not be much, if anything, the defense could do to get a jury to find a reasonable doubt with respect to any of the charges in the original information." Moreover, Gervais argues Dooley should have been aware that the charges in the original complaint were less severe than the facts supported and thus Gervais could secure a more favorable outcome by pleading to "the sheet" before the prosecutor added charges or allegations. Gervais has not shown Dooley's performance was deficient such that it fell below an objective standard of reasonableness under prevailing professional norms.

Applying the deferential standard that we must to Dooley's performance, there was no ineffective assistance of counsel. At the time of the readiness conference, which was nine days after the initial complaint was filed, it was not unreasonable for Dooley to recommend that Gervais "'go along with the process'" and plead not guilty. Dooley had only received partial discovery from the deputy district attorney two days before the readiness conference. The deputy district attorney had also informed Dooley that she was waiting on further documentation from the California Highway Patrol and would provide that on a later date.

Regardless, Gervais claims Dooley should have made efforts to investigate the facts of the case and anticipated that the deputy district attorney would amend the complaint to charge second degree murder or add sentencing enhancements. However, there was also a possibility that the district attorney may not have amended the complaint or could have offered a plea bargain even after amending the complaint. Indeed, we can envision a scenario in which Gervais may have claimed ineffective assistance had Dooley recommended pleading guilty at the readiness conference before Dooley had received the documents the deputy district attorney was waiting on from the California Highway Patrol and prior to evaluating whether a plea bargain was likely.

Although in hindsight, Dooley's strategy to recommend Gervais plead not guilty at the readiness conference may have been unsuccessful, we do not evaluate Dooley's performance under the distorted effects of hindsight; rather, we evaluate his conduct based on his perspective and the circumstances at the time. (*Strickland*, *supra*, 466 U.S. at p. 689.) Based on the status of the case and the information Dooley had before him,

7

including that pertinent discovery was forthcoming, we conclude he did not render ineffective assistance.

## DISPOSITION

The judgment is affirmed.


McINTYRE, J.

WE CONCUR:

HALLER, Acting P. J.

O'ROURKE, J.