Filed 5/3/16  P. v. Garcia CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DAVID GARCIA,<br><br>        Defendant and Appellant. | A144720<br><br>(Sonoma County<br>Super. Ct. No. SCR647980) |

Defendant David Garcia was caught possessing gang-related writings in violation of the terms of probation imposed on him following two convictions for assault.  After conferring with a court-appointed attorney, defendant admitted the violation.  One month later, he obtained a new attorney and moved to withdraw his admission, arguing his previous attorney did not advise him about potential defenses to the charged violation, or seek an indicated sentence from the trial court.  The trial court denied his motion.  We affirm.

## BACKGROUND

In April 2014, defendant was charged by felony complaint with three counts of assault (Pen. Code, § 245, subd. (a)(1), (4)),[1] with enhancements for committing the assaults for the benefit of, or at the direction of, a criminal street gang (§ 186.22, subd. (b)(2)).  Defendant pleaded no contest to two counts of assault and one count of active participation in a criminal street gang (§ 186.22, subd. (a)).  At a September 30 hearing,

---

[1] All further unspecified statutory references are to the Penal Code.

1

the trial court imposed formal probation for 36 months. The terms of defendant's probation specified he was not to possess or use alcohol or marijuana without a valid prescription. He was also prohibited from possessing any drawings, writings, or pictures concerning membership in a criminal street gang. Defendant was represented by Joe Rogoway, a private defense attorney, at both his plea hearing and sentencing hearing.

Less than two weeks after he was granted probation, defendant was charged with violating the terms of his probation after law enforcement found him in possession of alcohol and marijuana during a traffic stop. At a subsequent hearing on October 15, Defendant was represented by Lynn Stark-Slater of the Sonoma County Public Defender's Office. Defendant admitted to violating the terms of his probation at the hearing. The trial court reinstated probation and directed that defendant serve 30 days in the county jail, though it permitted defendant to serve his jail sentence on weekends to accommodate his work schedule. The court told defendant that 30 days in jail was "extremely lenient" and admonished him that "if they catch you with booze and/or marijuana or any other violation again, I'm going to send you to prison. When I say that to someone I mean it. Do you understand that?" Defendant said he understood.

Eleven days later on October 26, 2014, defendant was caught transporting gang-related writings, known as "kites," while leaving from one of his weekend stints in jail. The kites related to the transportation of marijuana into the jail, and referenced defendant and one of his codefendants. At a hearing two weeks later on November 12, defendant was again represented by Stark-Slater of the public defender's office, and admitted to violating his probation by possessing gang-related writings. Defendant informed the court he had discussed the matter with Stark-Slater and said he understood that by admitting to the violation, he was foregoing his right to a contested hearing. The matter was continued to December 12 for sentencing.

On the day scheduled for sentencing, Joe Rogoway, defendant's first attorney, substituted in as counsel in place of the public defender. Defendant then filed a motion to withdraw the admission to the probation violation he made on November 12. According to an accompanying declaration, Rogoway claimed that Stark-Slater "did not discuss with

2

[defendant] potential relevant defenses that could be available to him in this matter, nor did she advise that the successful presentation of any defense could lead to the complete dismissal of the allegations against him." The declaration also stated Stark-Slater "did not discuss with Mr. Garcia that in addition to raising substantive defenses to the alleged violation of probation, that there is additional process by which he could seek a negotiated resolution to an alleged violation of probation." Instead, Stark-Slater informed defendant "that he had no choice but to enter an Admission to the probation violation and leave his fate in the hands of the Court subject to the recommendation by Probation."

Stark-Slater was called as a witness by the district attorney at the hearing on defendant's motion. She explained that she had served as an attorney with the Sonoma County Public Defender's office since 1993. She then detailed her representation of defendant after he was charged with violating probation for a second time.[2] According to Stark-Slater, she first discussed defendant's case with him at an initial hearing after defendant was caught in possession of the kites. When asked if she received discovery related to defendant's case, Stark-Slater stated, "I received discovery on this case in two phases. The first was the initial violation of probation report, and then I conducted investigation to receive the second portion, which was a copy of the . . . kites that were in the possession of the Sonoma County Sheriff's Department."

After reviewing the discovery, Stark-Slater met with defendant twice more. The first meeting occurred on November 5 while defendant was in custody. Stark-Slater testified that she and defendant "discussed whether the individuals named in this kite were individuals he knew, whether those were relevant. We discussed what would likely happen at a violation of probation hearing, what we would have to show in order to win the violation of probation hearing: Specifically that you had a string of coincidences that landed the kite with [defendant] on that particular weekend, and his name happened to be

_____

[2] Defendant waived the attorney-client privilege as to the conversations he had with Stark-Slater.

in it, and his co-defendant's name happened to be in it." Stark-Slater informed defendant that she believed he was not likely to succeed at a violation of probation hearing, and recommended to defendant that he admit the violation. Stark-Slater met with defendant again before the November 12 hearing, where the two of them discussed the rights defendant would be waiving if he admitted the violation. Stark-Slater stated it appeared to her that defendant understood what she was explaining and indicated that he wanted to admit the violation.

Rogoway cross-examined Stark-Slater. Rogoway asked her whether she explained to defendant the defenses of necessity or duress during his meetings with defendant. Stark-Slater responded that she knew the defenses sometimes applied in cases involving criminal street gang activity, but that she did not discuss the defenses with defendant because nothing from her conversations with him led her to believe they applied to his case. Rogoway also questioned Stark-Slater about why she advised defendant not to contest the probation violation. She answered that "based upon the evidence the people had and the—that he was likely to be found in violation of probation, and based upon the court's comments, we would be better off trying to show the court that he was rehabilitating himself if we didn't have a viable defense to the violation of probation." Stark-Slater provided a similar answer in response to Rogoway's question about why she did not ask the court for an indicated sentence, stating "I didn't want to drive the court into a position where it felt backed into a wall by saying—no. I wanted to keep it open to hopefully give [defendant] some time to demonstrate to the court that he was serious about making a change."

The trial court denied defendant's motion and gave a detailed explanation for its decision. The court first addressed the adequacy of Stark-Slater's legal advice, stating that "after listening to the testimony of Ms. Stark-Slater, who testified credibly as to her advisements given to [defendant], that [defendant] was fully advised of possible defenses that he had in the case, and she analyzed those with him. Specifically, he was caught with a kite while leaving custody, and the contents of the kite apparently implicated him directly because of the reference to his co-defendants in the kite. [¶] He provided no

4

information whatsoever indicating that he was under duress in receiving that kite. And she analyzed and discussed his possible defenses with him. She not only advised him of his right to a contested hearing, but that was also stated by the court before taking his admission." As to Stark-Slater's experience, the court noted that she had "handled a huge number of violations of probation," and that her experience "is directly relevant in that regard to the charges against [defendant] and the advice that she gave him."

The trial court then addressed Stark-Slater's decision not to seek an indicated sentence: "Ms. Stark-Slater did testify as to her tactical decision not to address the court on possible sentences until after the admission was taken. And there appears to be a substantial basis for her decision in that regard and her advice to [defendant], based on her analysis. . . . [¶] I think [defendant] was fully advised of the risks he was taking. The court certainly told him at the time that he admitted his first violation . . . for drinking and being in possession of marijuana that that showed a very poor apprehension of the seriousness of the charges against him and the possible prison sentence that he—he faced. [¶] The court, in many situations would have simply sent him to prison at that time. But because of the nature of the violations and the fact that he appeared to at least have some prospects for rehabilitation, I not only put him back on probation, but released him from custody. The recommendation of probation and the strong advisement of the district attorney's office was he should serve time on that, but I was concerned he might lose his job and that would affect his ability to rehabilitate himself. But I told him at that time that he needed to take this very, very seriously. [¶] And what does he do? He goes out and somehow obtains a kite while in custody, which shows that he's still enmeshed in the gang culture, the very thing that got him involved in this assaultive situation to start with. And that not only shows a lack of apprehension of the seriousness of what he's facing, but that he has very poor prospects of rehabilitation."

The trial court then revoked defendant's probation and sentenced him to the middle term of three years on his first assault conviction. The court imposed a concurrent three-year sentence on defendant's other assault conviction.

Defendant timely filed a notice of appeal, which included a request for a certificate of probable cause. (See § 1237.5.) The trial court granted the request.

## DISCUSSION

Defendant argues the trial court abused its discretion by denying his motion to withdraw his admission to the probation violation because he demonstrated two separate grounds for good cause to withdraw his admission. First, he claims he had good cause because Stark-Slater failed to advise him of available defenses to the charged probation violation. Second, he contends he had good cause because Stark-Slater's failure to advise him of his right to seek an indicated sentence amounted to ineffective assistance of counsel.

The parties agree that the standards governing the withdrawal of an admission to a probation violation are the same ones governing the withdrawal of a guilty plea under section 1018. Section 1018 states, in pertinent part: "On application of the defendant at any time before judgment . . ., the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice." (§ 1018.) "The defendant has the burden to show, by clear and convincing evidence, that there is good cause for withdrawal of his or her guilty plea. (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1415-1416 (*Breslin*).) "To establish good cause to withdraw a guilty plea, the defendant must show by clear and convincing evidence that he or she was operating under mistake, ignorance, or any other factor overcoming the exercise of his or her free judgment, including inadvertence, fraud, or duress." (*Id.* at p. 1416.) "A denial of the motion will not be disturbed on appeal absent a showing the court has abused its discretion." (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.)

Defendant has not demonstrated an abuse of discretion under either of his theories. First, defendant's assertion that he was not advised of certain defenses is unpersuasive because he has not explained the relevance of those defenses to his case. (See *In re Brown* (1973) 9 Cal.3d 679, 685 [motion to withdraw plea properly denied when defendant presented "total lack of substantive grounds" to support claim of innocence],

6

superseded by statute on other point.) The only specific defenses Stark-Slater was questioned about during the hearing were duress and necessity. Stark-Slater testified that, based on her conversations with defendant, she believed neither defense applied. The trial court found her testimony to be credible, and defendant has not questioned that finding. Instead, defendant only discusses duress and necessity in the abstract without explaining their applicability to his case.[3] We do not see how Stark-Slater's failure to explain abstract legal principles to defendant could have affected the "exercise of his . . . free judgment" when he admitted to violating probation.[4] (*Breslin, supra*, 205 Cal.App.4th at p. 1416.)

We also reject defendant's related contention that he should be able to withdraw his plea because Stark-Slater did not conduct an investigation into defendant's case. The record on appeal contradicts defendant's argument; it reveals that after defendant was charged with possessing gang-related writings, Stark-Slater reviewed the writings and a

---

[3] For example, defendant's opening brief makes the threadbare assertion that Stark-Slater's "failure to advise [defendant] of the existence of potential defenses and her ability to investigate potential evidence to those defenses led [defendant] to believe he had no legitimate alternative to entering an admission to the violation of probation. Thus, [defendant] could not have knowingly and intelligently bargained away his rights because of prior counsel's failure to properly advise him."

[4] In response to a case cited by the Attorney General in its respondent's brief, *People v. Hernandez* (1979) 96 Cal.App.3d 856, defendant argued in his reply brief that his Fifth Amendment right not to be a witness against himself protects him from having to claim he is innocent to prevail on his motion. Defendant cites no authority to support this argument. His argument is also at odds with decisions from the California Supreme Court and courts of appeal affirming the denial of a motion to withdraw a plea in circumstances where the defendant did not deny culpability. (See *In re Brown, supra*, 9 Cal.3d at p. 685; *People v. Nance, supra,* 1 Cal.App.4th at p. 1456 [no abuse of discretion when defendant "apparently did not question his culpability for the acts"]; *People v. Beck* (1961) 188 Cal.App.2d 549, 553 ["If defendant had any facts that would have shown or tended to show him to be innocent of the offenses charged, and he believed that such facts should persuade the trial court to exercise a favorable discretion toward allowing him to withdraw his pleas of guilty, the burden was on defendant to present such facts to the court."].) In any event, we need not resolve this issue because even if we agree that defendant does not have to assert his innocence, he has failed to present any other evidence showing he had good cause to withdraw his plea.

probation report, then met with defendant to talk about his case. Stark-Slater's investigation led her to believe that defendant did not have a viable defense, and defendant never argues that Stark-Slater's assessment was incorrect.

Defendant's reliance on *People v. Harvey* (1984) 151 Cal.App.3d 660 (*Harvey*) and *In re Williams* (1969) 1 Cal.3d 168 (*Williams*) is misplaced because in each case, there was clear evidence the defendant's attorney failed to disclose information that could have exonerated the defendant. In *Harvey*, the defendant pleaded guilty to second degree murder without having been told that a psychiatrist who had examined the defendant concluded she lacked the required mental state to commit second degree murder. (*Harvey, supra*, at p. 665.) The appellate court concluded the trial court abused its discretion in denying the defendant's motion to withdraw her guilty plea because "it is clear from the record that she did not have knowledge of a defense, not only potentially meritorious, but absolutely critical to her case." (*Id.* at p. 671.) In *Williams*, the defendant pleaded guilty to forgery upon the advice of his counsel, but the attorney was unaware of case law holding the defendant's crimes were legally punishable only as separate credit card offenses. (*Williams, supra*, at p. 176.) Our Supreme Court granted the defendant's habeas corpus petition, finding that the attorney did not provide effective assistance of counsel because he did not research the facts and the law, and instead "permitted the petitioner to plead guilty to a crime which he did not commit." (*Id.* at p. 171.)

Defendant's second argument—that Stark-Slater provided constitutionally ineffective assistance by not seeking an indicated sentence—is likewise unavailing. A criminal defendant has the right to the effective assistance of counsel when entering a plea. (*People v. Perez* (2015) 233 Cal.App.4th 736, 740-41.) "To show denial of that right, a defendant must show: (1) his or her counsel's performance was below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defendant." (*Breslin, supra*, 205 Cal.App.4th at p. 1418.) "Where, as here, a defendant is represented by counsel during the plea process and enters his [or her] plea upon the advice of counsel, the voluntariness of the plea

8

depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " (*Hill v. Lockhart* (1985) 474 U.S. 52, 56 (*Hill*).) "The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." (*Id.* at p. 59.)

Defendant has not established that Stark-Slater's representation fell below an objective standard of reasonableness. Rather, the record indicates that Stark-Slater had a strategic reason for not seeking an indicated sentence. She represented defendant at his first probation violation hearing, where the trial court exhorted defendant he would be sent to prison if he violated probation again. After defendant was charged with the subsequent violation for possessing gang-related writings, Stark-Slater reviewed the writings and a probation report, then met with defendant to discuss his case. She then concluded defendant was likely to be found in violation of his probation. Faced with a weak case and the trial court's stern warning to defendant, Stark-Slater could reasonably conclude that defendant's best option was to admit the probation violation without discussing the sentence with the trial court. As Stark-Slater explained, this strategy would "hopefully give [defendant] some time to demonstrate to the court that he was serious about making a change."

Nor has defendant shown prejudice from Stark-Slater's decision not to ask for an indicated sentence. The trial court sentenced defendant to three years in prison, which is the middle term for an assault conviction. (§ 245, subd. (a).) Defendant was aware the trial court would likely impose such a sentence based on its comments following his first probation violation. Defendant, however, has presented no evidence showing that he would have received a shorter sentence or been found not to be in violation of probation had he proceeded to a full hearing instead of admitting the violation. We therefore cannot conclude defendant has shown a reasonable probability that he "would not have pleaded guilty and would have insisted on going to trial." (*Hill, supra*, 474 U.S. at p. 59.)

9

## DISPOSITION

The judgment is affirmed.

_____
Miller, J.

We concur:

_____
Kline, P.J.

_____
Stewart, J.